# JOPLIN MERCANTILE COMPANY *v.* UNITED STATES.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 648. Argued January 11, 1915.—Decided February 23, 1915.

A mere conspiracy without overt acts done to effect its object is not indictable under § 37, Judicial Code, and where the averment respecting the formation of the conspiracy refers to no other clause of the indictment for certainty, it must be interpreted as it stands, and in the absence of a distinct averment that the conspiracy was formed to introduce liquors into Indian country within Oklahoma from without the State, the indictment must be construed as relating only to intrastate transactions; it cannot be construed as including interstate transactions because of other averments as to the overt acts of some of the conspirators.

Where concurrent State and Federal control, although not necessarily exclusive of each other, would be productive of serious inconvenience

and confusion, this court may be, as in construing the act of March 1, 1895, and the Oklahoma Enabling Act, constrained to hold that the active exercise of Federal authority in suppressing the introduction of liquor into Indian country under the former was intended to be suspended pending the exertion of state authority on the same subject as prescribed by the Enabling Act.

Pending the continuance of state prohibition as prescribed by the Oklahoma Enabling Act, the provisions of the Act of March 1, 1895, c. 145, 28 Stat. 693, respecting intrastate transactions in regard to introducing intoxicating liquors into that part of the State which was the Indian Territory are unenforceable, although the statute has not been expressly repealed.

The Oklahoma Enabling Act did not repeal the acts of 1892 and 1897, prohibiting the introduction of liquor into Indian country within Oklahoma either as to interstate or intrastate shipments, *Ex parte Webb*, 225 U. S. 663, and *United States* v. *Wright*, 229 U. S. 226, and in this case the indictment sufficiently charges a conspiracy to commit an offense against those acts.

213 Fed. Rep. 926, affirmed.

THE facts, which involve the construction and application of the Federal statutes relating to the introduction of liquor into Indian country within the State of Oklahoma, are stated in the opinion.

*Mr. Paul A. Ewert*, with whom *Mr. C. H. Montgomery* was on the brief, for petitioners.

*Mr. Assistant Attorney General Wallace* for the United States.

By leave of court, *Mr. E. G. McAdams, Mr. Norman R. Haskell, Mr. C. B. Stuart, Mr. A. C. Cruce* and *Mr. M. K. Cruce* filed a brief as *amici curiæ:*

Unless construed as relinquishing. Federal control of intrastate commerce in intoxicating liquors between other parts of Oklahoma and the former Indian Territory, § 3 of the Oklahoma Enabling Act is repugnant to Art. I, § 8, Const. U. S., as an unconstitutional attempt to

authorize concurrent regulation of commerce which must be exclusively regulated either by State or Nation.

If susceptible of a reasonable construction, which will avoid constitutional question, the statute will be so construed.

The statute may be reasonably construed as remitting to the State exclusive control of intrastate transactions.

The State and the Nation cannot regulate the same commerce at the same time, but Congress may relinquish exclusive control to State. It has done so by the Oklahoma Enabling Act, as to intrastate commerce in liquors.

The act of March 1, 1895, having been superseded as to intrastate transactions by the Enabling Act, Const. U. S., Art. I, § 9, forbids its continuance in force as to interstate transactions.

This contention is not foreclosed by *Ex parte Webb*, 225 U. S. 663.

The act of March 1, 1895, is entitled to be called a regulation of Congress.

Art. 1, § 9 of the Constitution forbids the giving of a preference by any regulation of commerce to one State over another; it applies to commerce on land as well as by sea.

Treated as a regulation of commerce with Indian tribes, the statute gives a preference to Oklahoma, by permitting that State to regulate for itself the commerce in intoxicating liquors between its people and the former Indian Territory, while denying to the people of other States the right to engage in such commerce, under pain of Federal prosecution.

Treated as a regulation of interstate commerce, the act discriminates against Oklahoma by forbidding interstate commerce with a large part of Oklahoma, while not forbidding the introduction of liquor into any other State.

In support of these contentions see, *Bank of Alexandria* v. *Dyer*, 14 Peters, 141; *Bowman* v. *Chicago &c. Ry.*, 125

U. S. 465; *Boyd* v. *Alabama*, 94 U. S. 645; *Ex parte Cain*, 20 Oklahoma, 125; *The Cherokee Tobacco*, 11 Wall. 616; *C., R. I. & P. Ry.* v. *Hardwick Elevator Co.*, 226 U. S. 426; *Cohens* v. *Virginia*, 6 Wheat. 264; *Re Debs*, 158 U. S. 564; *Dooley* v. *United States*, 183 U. S. 168; *Gibbons* v. *Ogden*, 9 Wheat. 1, 189; *Grafton* v. *United States*, 206 U. S. 333; *Re Heff*, 197 U. S. 488; *L. S. & M. S. Ry.* v. *Ohio*, 173 U. S. 285; *Leisy* v. *Hardin*, 136 U. S. 100; *Murray's Lessee* v. *Baker*, 3 Wheat. 541; *N. Y. C. & H. R. R.* v. *Freeholders*, 227 U. S. 248; *Pennsylvania* v. *Wheeling Bridge*, 18 How. 421; *Pensacola Telegraph Co.* v. *West. Un. Tele. Co.*, 96 U. S. 1; *Perrin* v. *United States*, 232 U. S. 478; Prentice & Egan on Commerce Clause; *Shelby* v. *Guy*, 11 Wheat. 361; *Stephens* v. *Cherokee Nation*, 174 U. S. 445; *Thomas* v. *Gay*, 169 U. S. 264; *Tiger* v. *Western Invest. Co.*, 221 U. S. 286; *United States* v. *43 Gallons Whiskey*, 93 U. S. 188; *United States* v. *Holliday*, 3 Wall. 407; *United States* v. *Wright*, 229 U. S. 226; *United States* v. *Del. & Hud. Co.*, 213 U. S. 366; *Ward* v. *Race Horse*, 163 U. S. 504; *Ex parte Webb*, 225 U. S. 663; *Whitney* v. *Robertson*, 124 U. S. 190; *Worcester* v. *Georgia*, 6 Peters, 515.

MR. JUSTICE PITNEY delivered the opinion of the court.

In the District Court of the United States for the Southwestern Division of the Western District of Missouri the petitioners, Joplin Mercantile Company and Joseph Filler, with others, were indicted, under § 37 of the Criminal Code (Act of March 4, 1909, c. 321, 35 Stat. 1088, 1096), formerly § 5440, Rev. Stat.; the charge being that at Joplin, Missouri, within the jurisdiction of the court, the defendants did unlawfully, feloniously, etc., "conspire together to commit an offense against the United States of America, to wit, to unlawfully, knowingly, and feloniously introduce and attempt to introduce malt, spirituous,

vinous, and other intoxicating liquors into the Indian country which was formerly the Indian Territory and now is included in a portion of the State of Oklahoma, and into the City of Tulsa, Tulsa County, Oklahoma, which was formerly within and is now a part of what is known as the Indian country, and into other parts and portions of that part of Oklahoma which lies within the Indian country." Overt acts are alleged, each of which consisted in delivering to an express company in Joplin certain packages of intoxicating liquors to be transported thence to Tulsa, Oklahoma, alleged to be within the Indian country. A demurrer and a motion to quash having been overruled, petitioners pleaded to the indictment, were tried and found guilty. A motion in arrest of judgment having been denied, they sued out a writ of error from the Circuit Court of Appeals, where the only question raised was whether the indictment charged an offense against the laws of the United States; neither the evidence nor the charge of the trial court being brought up. The judgment of the District Court was affirmed (213 Fed. Rep. 926), and the present writ of certiorari was applied for, principally upon the ground that the decision of the Court of Appeals was to some extent in conflict with the views expressed by this court in *Ex parte Webb*, 225 U. S. 663, and *United States v. Wright*, 229 U. S. 226.

That clause of the indictment which sets forth the conspiracy does not in terms allege, as a part of it, that the liquor was to be brought from without the State of Oklahoma; nor does this clause refer, for light upon its meaning, to the clauses that set forth the overt acts. Hence, we do not think the latter clauses can be resorted to in aid of the averments of the former. It is true, as held in *Hyde* v. *Shine*, 199 U. S. 62, 76; and *Hyde* v. *United States*, 225 U. S. 347, 359; that a mere conspiracy, without overt act done to effect its object, is not punishable criminally under § 37 of the Criminal Code. But the averment

of the making of the unlawful agreement relates to the
acts of all the accused, while overt acts may be done by
one or more less than the entire number, and although
essential to the completion of the crime, are still, in a
sense, something apart from the mere conspiracy, being
"an act to effect the object of the conspiracy." For this
reason, among others, it seems to us that where, as here,
the averment respecting the formation of the conspiracy
refers to no other clause for certainty as to its meaning, it
should be interpreted as it stands. *United States* v.
*Britton*, 108 U. S. 199, 205. We therefore think the Court
of Appeals properly treated this indictment as not charg-
ing that the liquors were to be introduced from another
State, and correctly assumed in favor of the accused
(supposing the law makes a distinction), that the design
attributed to them looked only to intrastate commerce
in intoxicants. The suggestion of the Government that
the omission of a distinct averment that the conspiracy
was to introduce the liquors from without the State did
not prejudice petitioners, and should be regarded after
verdict as a defect in form, to be ignored under § 1025,
Rev. Stat., cannot be accepted, since we have before us
only the strict record, and therefore cannot say that the
trial proceeded upon a different theory from that indicated
by the indictment, or that its averments were supple-
mented by the proofs.

The offense against the laws of the United States that
was the object of the conspiracy must have had reference
to one or the other of two distinct prohibitions. The
one is that arising from the Act of July 23, 1892, c. 234,
27 Stat. 260, amending § 2139, Rev. Stat., and amended in
its turn by the Act of January 30, 1897, c. 109, 29 Stat.
506. The other is § 8 of the Act of March 1, 1895, c. 145,
28 Stat. 693. These are set forth in chronological order
in 225 U. S. 671. The distinction now pertinent is that,
under the act of 1897: "Any person who shall introduce

or attempt to introduce any malt, spirituous, or vinous liquor  .  .  .. or any ardent or intoxicating liquor of any kind whatsoever *into the Indian country, which term shall include any Indian allotment* while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States; shall be punished," etc.; while the Act of 1895 declares: "That any person,  .  .  . who shall, in said [Indian] Territory, manufacture  .  .  . any vinous, malt, or fermented liquors, or any other intoxicating drinks  .  .  . or who shall carry, or in any manner have carried, *into said Territory* any such liquors or drinks  .  .  . shall, upon conviction thereof, be punished," etc.  The former has to do with the introduction of liquor into the "Indian country"; the latter relates not to the Indian country as such, but to the Indian Territory as a whole, irrespective of whether it, or any particular part of it, remained "Indian country."

In *Ex parte Webb, supra,* we dealt with the effect of the Oklahoma Enabling Act, and the admission of the State thereunder, upon the prohibitions contained in the act of 1895, and held that this act remained in force so far as it prohibited the carrying of liquor from without the new State into that part of it which was formerly the Indian Territory.  In *United States* v. *Wright, supra,* we held that the prohibition against the introduction of intoxicating liquors into the Indian country found in the act of 1897 was not repealed with respect to intrastate transactions by the Enabling Act and the admission of the State.  In the present case, the Court of Appeals held that transportation of intoxicating liquors from the westerly portion of Oklahoma to that part which was formerly Indian Territory was prohibited not only by the act of 1897 but by the act of 1895; holding that this act remained unrepealed as to intrastate commerce in intoxicating liquors, notwithstanding the intimations of

this court to the contrary in the *Webb* and *Wright Cases.* In behalf of the Government it is now insisted that the indictment is clearly sustainable under the act of 1897, and that it is therefore unnecessary to pass upon the question raised about the Act of 1895. But, in view of its importance, and the confusion that would probably result if the matter were left in uncertainty, we deemed it proper to allow the writ of certiorari, and now deem it proper to pass upon the merits of the question with respect to both Acts.

The Court of Appeals correctly considered that the question whether the act of 1895 remains in force respecting intrastate transactions was not concluded by our decision in either the *Webb* or the *Wright Cases.* The declaration upon the subject in 225 U. S. at p. 681 was based upon a concession by the Government, and was stated in unqualified form in order to emphasize that the concession was fully accepted for the purposes of the decision. In the *Wright Case* (229 U. S. at p. 236) we saw no reason to recall it, and so stated; but here again the point was not involved in the question to be decided. It was accepted *arguendo*, rather as an obstacle in the way of reaching the conclusion that the court did reach, upon grounds that held good, as we thought, notwithstanding the point conceded. As was well said by Mr. Chief Justice Marshall, in one of his great opinions, *Cohens* v. *Virginia,* 6 Wheat. 264, 399: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." And if this be true with respect to mere *dicta*, it is no less true of concessions made for the purpose of narrowing the range of discussion, or of testing, by assumed obstacles, the validity of the reasoning by which

the court reaches its conclusions upon the point submitted for decision.

The Court of Appeals declared that the effect of holding that the Enabling Act and the admission of the State repealed the law of 1895 as to importations from parts of Oklahoma not in Indian Territory, would be that importations would remain prohibited from the north, south, and east of the Territory, while those from the west would be turned over to the State; and that the provision of the Enabling Act requiring the constitution of the new State to provide a scheme of liquor prohibition is of no validity if Oklahoma sees fit to repeal the prohibition, as it is said she is at liberty to do, being equal in power with the original States and entitled to set aside all restrictions placed upon her that are not obligatory under the Constitution. Citing *Coyle* v. *Oklahoma,* 221 U. S. 559. As indicating that the act was passed in part as an exertion of the power of guardianship over the Indians, and in part under the power to regulate commerce with them, the court pointed to the pledges of the Federal Government, contained in repeated treaties, to protect the Indians of the Civilized Tribes against the evils of intercourse with people of the white race, especially with respect to the sale of intoxicating liquors; emphasizing the fact that Indian Territory contains the largest body of Indian population in the United States, from which the inference was drawn that Congress could not turn them over to the protection of the local authorities without running counter to the uniform practice of the Federal Government in such matters; that § 1 of the Enabling Act expressly reserves full authority to the National Government for the protection of the Indians and their property, and that protection against the liquor traffic has always been their greatest need; and that numerous statutes, passed about the time Oklahoma was admitted, to protect the Indians against the evils of intoxicating liquor, showed that Con-

gress intended to exercise this protection itself and not to
remit it to the State. The conclusion was reached that
the liquor prohibition imposed upon the State by § 3 of
the Enabling Act (quoted at large 225 U. S. 677) was in-
tended to secure the coöperation of the state authorities,
and not to remit to the State the whole subject of the
guardianship of the Indians so far as approach to them
from the west was concerned. That since, even after ad-
mission of the State, there was nothing to prevent Con-
gress from prohibiting importation of liquors into the
Indian Territory, peopled, as it was, so largely by Indians,
there was no reason to believe that the admission of the
State was intended to repeal the 1895 law with respect to
the western boundary of the Indian Territory; that under
the circumstances of that Territory the acts of 1892 and
1897 were inefficient for the protection of the Indians
in this regard, while with the act of 1895 alone in force,
prohibiting the carrying of liquor within the Indian
Territory, it would not be unlawful to transport liquor
from a point within that Territory to an allotment therein;
hence the necessity of maintaining in force at the same
time the provisions of the acts of 1892 and 1897 prohibit-
ing the introduction of liquor into the Indian country.

The argument has much weight. This court, when
deciding the *Webb* and *Wright Cases*, fully appreciated the
force of the considerations referred to, as will be manifest,
we think, by reference to the opinions, especially that
delivered in the former case. But it seems to us that the
views expressed by the court below in the present case
merely question the reasonableness of implying a repeal
of the act of 1895, and hardly attribute full force to the
very clear language of the Enabling Act. Upon the
question of reasonableness, the fact that importations of
liquor into the Territory from the north, east, and south
should remain subject to the interdict of the Federal law,
while importations from the west (unless originating

.without the State) were remitted to state control, is not an anomalous result but one rather characteristic of the inter-action of our Federal and state governments.

We pass on to state, in outline, the grounds upon which the judgment is assailed by counsel for petitioners, and in a separate argument by friends of the court. It is insisted that the provision of the Enabling Act requiring the State to forbid, under penalties, the introduction of intoxicating liquors from other parts of the State into the former Indian Territory can be upheld only by construing it as repealing the provisions of the act of 1895 so far as they deal with such intrastate transactions, because otherwise the Enabling Act would be repugnant to the Commerce Clause of the Constitution of the United States as an attempt to authorize concurrent regulation by state and Federal authority of commerce with the Indians, which it is said, must be exclusively regulated either by State or by Nation; that the Enabling Act may be reasonably construed as relinquishing to the State the exclusive control over commerce in intoxicating liquors between other parts of the State and the former Indian Territory, but not as a regulation of commerce with Indians, because, it is insisted, under the Constitution, Congress cannot delegate to a State the power to regulate commerce with the Indians, any more than the power to regulate interstate commerce, and hence the prohibition clause of the Enabling Act is to be sustained as a surrender to the State of jurisdiction over its own citizens, thereby declared by Congress to be no longer members of Indian tribes so far as commerce in intoxicating liquors is concerned; the Enabling Act being thus treated as in effect a determination by Congress that the tribal relations and guardianship of the Indians should cease, at least as to traffic in liquor between them and the citizens of other portions of the State, leaving the State to regulate this by means of the legislation that the Enabling Act re-

quired it to enact on the subject.  It is next argued that,
the act of 1895 having been superseded as to intrastate
transactions by the Enabling Act, it is beyond the power
of Congress to continue it in force as to interstate trans-
actions, and this for two reasons, both based upon the
provision of § 9 of Article I of the Constitution that "No
preference shall be given by any regulation of commerce
or revenue to the ports of one State over those of an-
other": (a) that the prohibition cannot be maintained
as an exercise of the power to regulate interstate com-
merce, because in that aspect it *discriminates against* the
State of Oklahoma by forbidding transportation of liquor
into that State from without, while permitting the unre-
stricted transportation of liquor into the other States; and
(b) that it cannot be sustained as an exercise of the power
of Congress to regulate commerce with the Indian tribes
because it gives a *preference to* the State of Oklahoma by
permitting that State to regulate for itself the commerce
in intoxicating liquors between the people of other parts
of the State and the former Indian Territory, while deny-
ing to the people of all the other States the right to engage
in such commerce with the same Territory.  The result
sought to be deduced is that, by reason of the passage of
the Enabling Act and the admission of the State there-
under, the act of 1895 cannot be sustained at all.  It is
said this does not impute to Congress the purpose to pass
an act in excess of its powers under the Constitution;
that the act when passed was justified not only as a regu-
lation of commerce with the Indian tribes but as an ex-
ercise of jurisdiction over territory then within the ex-
clusive jurisdiction of the United States; and that it is
now unconstitutional as to interstate transactions, not
because of the want of power in Congress to originally
pass it, but because of the changed conditions growing
out of the admission of the State under an Enabling Act
inconsistent with the continuance in force of the act of

1895. And it is said that this question is not foreclosed by the decision in the *Webb Case* sustaining the act as to interstate transactions, because—and this is true—the question under § 9 of Article I of the Constitution was not then raised. Citing *Boyd* v. *Alabama*, 94 U. S. 645, 648.

The reasoning, like the opposed reasoning of the court below, has force; but we think it has also elements of weakness. Thus,—to mention only one or two of these— it is not easy to see how any practical preference is given to the State of Oklahoma in the way of permitting com- merce in intoxicating liquors to be conducted between other portions of the State and the former Indian Territory while denied to the people of other States, when the very clause of the Enabling Act that operates, if any does, to destroy the former universality of the act of 1895 does not permit but prohibits commerce in liquors between the one part of the State and the other; the only difference here important being that as to internal commerce the State enforces the prohibition, while as to interstate com- merce it is enforced by the United States. Nor is the sug- gestion convincing that the act of 1895 (if repealed as to intrastate commerce only) remains as a discriminatory regulation of commerce between the States unfavorable to Oklahoma; for in this aspect it forbids not the intro- duction of liquors from other States into Oklahoma, but only their introduction into that particular part of it which, because of the larger population of Indians that it contains, and because of the previous treaties and the other circumstances pointed out in the *Webb Case*, Con- gress deemed to be properly entitled to that protection. Moreover, supposing that unconstitutional preferences must be deemed to arise from a partial repeal of the act of 1895 by the prohibitory provision of the Enabling Act, it would, we think, be more logical to avoid the constitu- tional difficulties by giving less force to that provision of the Enabling Act than by giving to it a force quite beyond

the expressed purpose of Congress. The result would be, if the argument of petitioners as to the impossibility of concurrent regulation of intrastate transactions in liquors with the former Indian Territory by State and Nation is sound, that the state prohibition of the liquor traffic in the Territory and between the other parts of the State and the Territory would have to remain in abeyance until Congress should expressly repeal the act of 1895.

Enough has been said to show the principal grounds of the respective contentions. And it is curious to observe that on each side the argument rests largely upon the supposition that the implied repeal of the act of 1895, if deduced from the inconsistent provisions of the Enabling Act upon the same subject, operated in effect to legalize commerce in intoxicating liquors between the eastern and the western portions of the State. But since the principal inconsistency is that in one case the prohibition of the traffic is to be enforced by the United States and in the other case by the State, many of the difficulties disappear as soon as clearly stated. We need not further analyze the constitutional argument submitted in behalf of petitioners, and must not be understood as committed respecting it.

Conceding that the question with which we have to deal is by no means easy of solution, we think a right solution may be had by considering the terms of the Enabling Act in the light of the situation that was presented to Congress, and in view of its constitutional powers. The situation of the Indians and the Indian lands at the time is so familiar that it need not be here rehearsed. In addition to what has been said upon the subject in our recent decisions, reference may be made to the Committee Report that accompanied the bill in the House of Representatives (H. R. Report No. 496, January 23, 1906, 59th Cong., 1st Sess., Vol. 1). There was a large population of Indians in the Indian Territory, but a much larger

population of whites. Under the provisions of the Curtis Act (June 28, 1898, c. 517, 30 Stat. 495), towns had been organized and were growing rapidly, and much of the land had been allotted. Congress no doubt had in mind the existing agreements with the Five Civilized Tribes, some of them recently made, by which, in one form or another, the United States had agreed to maintain laws against the introduction, sale, etc., of liquors within the territory of the tribes (225 U. S. 684-686). In the first section of the Enabling Act (June 16, 1906, c. 3335, 34 Stat. 267) a reservation was made of the authority of the United States "to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this Act had never been passed." The authority of Congress to preserve in force existing laws or enact new ones after statehood with reference to traffic or intercourse with the Indians, including the liquor traffic, was well established; the power of Congress over such commerce being plenary, and independent of state boundaries. *United States v. Holliday,* 3 Wall. 407, 418; *United States v. Forty-Three Gallons of Whiskey,* 93 U. S. 188, 195, 197; *S. C.,* 108 U. S. 491; *United States v. Kagama,* 118 U. S. 375, 383; *Dick v. United States,* 208 U. S. 340, 353; *Hallowell v. United States,* 221 U. S. 317, 323; *Ex parte Webb,* 225 U. S. 663, 683; *United States v. Wright,* 229 U. S. 226, 237; *Perrin v. United States,* 232 U. S. 478, 483; *Johnson v. Gearlds,* 234 U. S. 422, 438.

Still, the Territory was to be erected into a State, and the Indians themselves were to have the rights of citizens. As we have already held in the *Wright Case, supra,* it was the purpose to maintain in full force the acts of 1892 and 1897 the same in this State as in other States where Indian country or Indian allotments held in trust by the Government or Indians as wards of the Government were

found. And while we intimate no question that Congress could have maintained the more sweeping internal prohibition of the 1895 act, this would have interfered to a greater extent with the control of the new State over its internal police.

Reading the Enabling Act as a whole in the light of this situation, including the declaration in its first section of the continued authority of the Government of the United States respecting the Indians, the specific requirement in the third section that the state constitution should contain a stringent prohibition of the manufacture, sale, etc., of intoxicating liquors within the Indian Territory and the Reservations for a period of twenty-one years from the date of admission, and thereafter until amendment of the constitution, and the express provision that any person who should manufacture, etc., or should ship or convey such liquors from other parts of the State into the Indian Territory or Reservations should be punished both by fine and imprisonment, we think the inference is irresistible that it was the purpose of Congress that the people of the State should be entrusted with actual power and control over the liquor traffic between the other portions of the State and the Territory and Reservations, and that, for the time at least, they should have the same control that is enjoyed by other States, it being, of course, subject to the effect of the acts of 1892 and 1897.

Without deciding that such control must necessarily be exclusive of co-existing Federal jurisdiction over the same subject-matter, it seems to us that concurrent jurisdiction would be productive of such serious inconvenience and confusion, that, in the absence of an express declaration of a purpose to preserve it, we are constrained to hold that the active exercise of the Federal authority was intended to be at least suspended pending the exertion by the State of its authority in the manner prescribed by the Enabling Act.

Still, the act of 1895 was not expressly repealed; and it must have been in contemplation that the State might amend its constitution and laws upon the subject, at least upon the expiration of twenty-one years; and we do not intend to hold, nor even to intimate, that the effect and operation of the act of 1895 upon intrastate commerce in liquors would still remain in abeyance after a repeal or material modification of the state prohibition upon the subject. The subject-matter of this legislation, is quite different from that which was under consideration in *Coyle* v. *Oklahoma*, 221 U. S. 559; and it does not follow from what was there decided that the plan of intrastate prohibition proposed to the State by Congress in the Enabling Act and accepted by the State, would be subject to repeal by the State within the prescribed period. Nor does it follow from anything we have said that Congress may not, during that period, by reënacting in substance the act of 1895, or by appropriate affirmative legislation in some other form, resume the Federal control over the liquor traffic in and with what was Indian Territory, by virtue of its general authority over Indian relations. These and kindred questions may be dealt with if and when occasion arises.

Our opinion upon this branch of the case is that, pending the continuance of state prohibition as prescribed by the Enabling Act, the provisions of the act of 1895 respecting intrastate transactions are not enforceable.

But, as already held in *United States* v. *Wright, supra,* the Acts of 1892 and 1897 have not been repealed by the Enabling Act with respect to intrastate commerce in intoxicants, any more than with respect to commerce that crosses state lines. And it remains to be considered whether the indictment sufficiently sets forth a conspiracy to commit an offense against these acts. This turns upon the destination of the liquors as intended by the conspirators. It is averred that three several destinations

were in contemplation: (a) the Indian country which was formerly the Indian Territory and now is included in a portion of the State of Oklahoma; (b) the city of Tulsa, Tulsa County, Oklahoma, which was formerly within and is now a part of what is known as the Indian country; and (c) other parts and portions of that part of Oklahoma which lies within the Indian country. It is said by petitioners that Tulsa was established as a town under the Curtis Act of June 28, 1898, and the Creek Agreement (act of March 1, 1901, c. 676, 31 Stat. 861), and that we ought to take judicial notice of what is said to appear upon the records of the Department of the Interior, that on February 21, 1901, the exterior limits of the town were approved and the tract thus reserved from allotment and set aside for town site purposes, that unrestricted patents have since been issued, and that at the time of the alleged offense Tulsa was a city of 30,000 people. For the sake of simplicity we assume the facts to be so, without deciding that we may take judicial notice of them. But we think the third clause, "other parts and portions of that part of Oklahoma which lies within the Indian country," is sufficient to sustain the indictment in this respect. It is objected by petitioners that this is vague and indefinite, and does not apprise the defendants with certainty of the offense with which they stand charged so as to enable them to prepare the defense; that there were more than 100,000 allotments made to Indians of the Five Civilized Tribes alone, and that the courts should take judicial notice of the fact that the restrictions upon three-fourths of the allotments of mixed bloods have been removed by direct legislation of Congress, not to speak of the lands taken out of Indian country by being included within established town sites. But upon this record we are bound to assume that the indictment sets forth the agreement as it was made by the convicted defendants. That agreement looked to the introduction of intoxicating

liquors into those portions of the State that lie within the Indian country. Presumably the defendants did not, at the time of conspiring, specify the particular points in the Indian country to which the liquor should be shipped; nevertheless, the conspiracy could not be carried out as made without violating the act of 1897.

The indictment is therefore sufficient, and the judgment should be affirmed.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.