## SHARP v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. December 6, 1926.)

No. 7531.

1. States ⊝9—Statute prohibiting introduction of liquor into Indian country remained in force after admission of Oklahoma as state (Comp. St. §§ 4136b, 4137aa).

Act March 1, 1895, § 8 (Comp. St. § 4136b), prohibiting the introduction of intoxicating liquor into Indian country, referred to in Act June 30, 1919 (Comp. St. § 4137aa), remained in force and effect after admission of Oklahoma as a state.

2. Indians ⊝35—Statute prohibiting possession of liquor in Indian country held not unconstitutional interference with state police powers (Comp. St. § 4137aa).

Act June 30, 1919 (Comp. St. § 4137aa), prohibiting the possession of intoxicating liquor in Indian country, or where the introduction is or was prohibited by treaty or federal statute, held not unconstitutional as an unauthorized interference with the internal police powers of the state.

3. Indians ⊝35—Possession of tincture of ginger or imitation apricot extract within limits of Indian country is unlawful, under statute prohibiting possession of "intoxicating liquors" (Comp. St. § 4137aa).

Under Act June 30, 1919 (Comp. St. § 4137aa), prohibiting the possession of intoxicating liquors in Indian country, or where the introduction is or was prohibited by treaty or federal statute, the possession of intoxicating medicated compounds, particularly tincture of ginger and imitation apricot extract, is unlawful, in view of Act July 23, 1892 (Comp. St. § 4136a), Act Jan. 30, 1897 (Comp. St. § 4137), and Act March 1, 1895 (Comp. St. § 4136b).

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Habeas corpus by F. A. Sharp to obtain his release after arrest on a charge of possessing intoxicating liquor in Indian country. To review an adverse order (13 F.[2d] 651), petitioner brings error. Affirmed.

John T. Harley, of Tulsa, Okl., for plaintiff in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

LEWIS, Circuit Judge. Plaintiff in error (he should have come here on appeal) was charged before United States Commissioner with having in his possession and under his control at No. 206 South Boulder Street, in the City of Tulsa, Oklahoma, "certain intoxicating liquor, to wit, eight (8) bottles each containing two fluid ounces of tincture of ginger, and eight bottles containing four fluid ounces each of imitation apricot extract [all of said intoxicating liquor containing more than one-half of one per cent. of alcohol measured by volume and] capable and fit for use for beverage purposes, and when so used for beverage purposes would produce intoxication; the place within Tulsa County, Oklahoma, where said intoxicating liquors aforesaid were kept and possessed by said defendant having been within the limits of the Indian Territory and a part thereof prior to the admission of the state of Oklahoma into the

Union as one of the United States of America," etc. We think the clause which we have inclosed in brackets is surplusage and will disregard it. After hearing, the commissioner found probable cause, ordered that Sharp be held to appear at the next term of court and fixed his bail in the sum of one thousand dollars. He failed to furnish the bail and was committed to the marshal to be held in jail until discharged by due course of law. He thereupon sued out the writ of habeas corpus, alleging in his verified petition therefor that the complaint against him did not charge any offense against the United States, that the proof taken on preliminary hearing did not show probable cause to believe that any offense against the laws of the United States had been committed and that neither the Jamaica ginger nor the apricot extract was an intoxicating liquor and that they were not fit for use as a beverage. He submitted with his petition a transcript of the testimony taken at the preliminary hearing. The writ prayed for was issued. The marshal made return that petitioner was held under commitment from the United States Commissioner because of the criminal charge made against him and his failure to furnish bail. At the hearing on the petition for discharge the district attorney offered further evidence additional to that offered on the preliminary hearing. The application of the petitioner for discharge from custody was then denied; and he has brought that order here for consideration, complaining of error.

[1] The charge made before the commissioner on which Sharp was being held in custody is based on the Act of June 30, 1919 (41 Stat. 4, U. S. Comp. Stat. 1916, 1923 Supp. § 4137aa, which reads:

"On and after July 1, 1919, possession by a person of intoxicating liquors in the Indian Country, or where the introduction is or was prohibited by treaty or Federal statute, shall be an offense and punished in accordance with the provisions of the Acts of July 23, 1892 (Twenty-Seventh Statutes at Large, page 260), and January 30, 1897 (Twenty-Ninth Statutes at Large, page 506)."

The Federal statute which prohibits the introduction of intoxicating liquor into Indian Territory (now a part of Oklahoma), referred to in the Act of June 30, 1919, is Section 8 of the Act of March 1, 1895 (28 Stat. 693), which reads as follows:

"That any person, whether an Indian or otherwise, who shall, in said Territory, manufacture, sell, give away, or in any manner, or by any means furnish to any one, either for himself or another, any vinous, malt, or fermented liquors, or any other intoxicating drinks of any kind whatsoever, whether medicated or not, or who shall carry, or in any manner have carried, into said Territory any such liquors or drinks, or who shall be interested in such manufacture, sale, giving away, furnishing to any one, or carrying into said Territory any of such liquors or drinks, shall, upon conviction thereof, be punished by fine not exceeding five hundred dollars and by imprisonment for not less than one month nor more than five years." Comp. St. § 4136b. This section of the Act of March 1, 1895, remained in force and effect after the admission of the State of Oklahoma. Ex parte Webb, 225 U. S. 663, 32 S. Ct. 769, 56 L. Ed. 1248; Joplin Mer. Co. v. United States, 236 U. S. 531, 35 S. Ct. 291, 59 L. Ed. 705.

[2] One of the propositions relied on by Sharp's counsel is this: The Act of June 30, 1919, is unconstitutional and void because it is an unauthorized interference with the internal police powers of the State. This contention has been presented here several times, and in each case we have held it to be untenable. Edwards v. United States (C. C. A.) 5 F.(2d) 17; Lucas v. United States (C. C. A.) 15 F.(2d) 32 (opinion filed October 4, 1926); Renfro v. United States, 15 F.(2d) 991 (opinion filed October 27, 1926); and Buchanan v. United States (C. C. A.) 15 F. (2d) 496 (opinion filed November 1, 1926). In the Edwards Case, supra, the charge was possession of 34 gallons of whisky in Coal County, Oklahoma, which was within the limits of the Indian Territory prior to the admission of the State of Oklahoma into the Union—a place where the introduction of spiritous and intoxicating liquor is and was prohibited by Federal statutes; in the Lucas Case, supra, the charge was possession of whisky in Okfuskee County, Oklahoma, which was within the limits of the Indian Territory and a part thereof prior to the admission of the State of Oklahoma into the Union, being then and there a place where the introduction of spiritous and intoxicating liquor is and was prohibited by Federal statutes; in the Renfro Case, supra, the charge was possession of whisky in Tulsa County, Oklahoma, within the limits of the Indian Territory and a part thereof prior to the admission of the State of Oklahoma into the Union, being then and there a place where the introduction of intoxicating liquor is and was prohibited by Federal statutes; and in the Buchanan Case, supra, the charge was possession of intoxicating liquor (grain alcohol) in Tulsa County, Oklahoma, and within the limits of the Indian Territory and a part thereof prior to

the admission of the State of Oklahoma into the Union, being then and there a place where the introduction of spiritous and intoxicating liquors is and was prohibited by Federal statutes. In each of these cases we held the charge was good, not subject to the attack here made and sustained the conviction. This question is no longer open to debate. See also Browning v. United States (C. C. A.) 6 F.(2d) 801, and Ammerman v. United States (C. C. A.) 267 F. 136.

[3] It is further contended that the Act of June 30, 1919, prohibits the possession of intoxicating liquors only, and that the omission of any reference therein to intoxicating medicated compounds and preparations should be taken as not including the latter, thus leaving intoxicating liquors to the common understanding of that term. Cases are cited which hold that intoxicating liquors do not include medicinal or culinary compounds, although they may contain sufficient amount of alcohol to produce intoxication. Intoxicating-Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284; Holcomb v. Payne, 49 Ill. App. 73; Bertrand v. State, 73 Miss. 51, 18 So. 545. Sarlls v. United States, 152 U. S. 750, 14 S. Ct. 720, 38 L. Ed. 556, is also relied on. In that case the statute prohibited the introduction of spiritous liquors or wines into the Indian Country, and it was held that lager beer did not come within the terms of the statute. In the 25th Report of Kansas eight cases were brought up for consideration, charging violations of the Kansas Prohibition Act of 1881, c. 128. Section one of the Act prohibited the sale of intoxicating liquors, with a proviso that they might be sold for the excepted purposes as provided in the Act; and section 10 was this:

"All liquors mentioned in section one of this Act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within the meaning of this Act."

In three of the cases the charges respectively, were, selling bay rum, tincture of gentian, and essence of lemon, in which motions to quash the information were sustained. That ruling was affirmed on the ground that the articles sold were for toilet and culinary purposes. It was held that the broad purpose of the Act was to prohibit the sale of intoxicating liquors for beverage purposes, that the articles sold were not intended for that purpose and were not used for that purpose, although if drunk in sufficient quantities the alcoholic content would produce intoxication. As to those articles it was said:

"We have had occasion to notice heretofore the cardinal canon of construction, which is that the intent when ascertained governs, and to that all mere rules of interpretation are subordinate. The State v. Bancroft, 22 Kan. 205. The letter does not always express the intent."

And thereto was added a quotation from Eyston v. Studd, 2 Plow. 465:

"It is not the words of the law, but the internal sense of it, that makes the law, and our law (like others) consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law are the soul of the law, quia ratio legis est anima legis. And the law may be resembled to a nut, which has a shell and a kernel within: the letter of the law represents the shell and the sense of it the kernel; and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter, and as the fruit and profit of the nut lie in the kernel, and not in the shell, so the fruit and profit of the law consist in the sense more than in the letter. And it often happens, that when you know the letter, you know not the sense, for sometimes the sense is more confined and contracted than the letter, and sometimes it is more large and extensive."

In others of the cases there considered there were charges of sales of Dr. J. H. McLean's "Strengthening Cordial and Blood Purifier," and Dr. B. Sherman's compound "Prickley-Ash Bitters, No. 2," each charged to be intoxicating liquors, to which motions to quash had been sustained. As to these, it was said that while compounds containing alcohol and well known for their medicinal purposes might be sold under the restrictive provisions of the Act, nevertheless those charged to have been sold were not of an established name and character, not found in the United States dispensatory or other like standard authorities, and it was a question of fact whether they were purely medicinal in their purpose and effect or mere substitutes for the usual intoxicating beverages; and so the ruling of the trial court quashing these informations was reversed and the cases remanded for trial on the facts. The opinion is instructive, clear and able in discussion, having been rendered by Justice Brewer, later United States Circuit Judge and thereafter a member of the Supreme Court of the United States. However, the Kansas statute is so different from the Acts of Congress under consideration here the opinion gives little aid on the present inquiry. It is true that the Act of June 30, 1919, uses only the term "in-

toxicating liquors," but that Act is not complete in itself. Standing alone it is without any effect. The references contained in it give it vitality. It refers expressly to the Acts of July 23, 1892 (Comp. St. § 4136a), and January 30, 1897 (Comp. St. § 4137), and also to the Act of March 1, 1895. The purpose of both Acts, to which reference is made, is obvious. Each prohibits the disposal of intoxicating liquors to Indians, including in the prior Act intoxicating drinks of any kind whatsoever, whether medicated or not, and including in the latter Act intoxicating liquors of any kind whatsoever, or any essence, extract, bitters, preparations, compounds, composition or any article whatsoever, under any name, label or brand, which produces intoxication to any Indian. The prior Act prohibited the carrying of any such liquors or drinks into Indian Country. These two Acts, as well as that of June 30, 1919, exhibit an exertion of the police power for the protection of the Indian. The last one was an extension of the protection given by the two earlier Acts. The Act of March 1, 1895, expressly prohibited the introduction of intoxicating liquors and intoxicating drinks of any kind whatsoever, whether medicated or not. . This Act was in the mind of Congress when it passed the Act of June 30, 1919, and we think it quite unreasonable to say that by the use of "intoxicating liquors" in that Act there was no intention to prohibit possession within Indian Territory of the intoxicants named in the Act of March 1, 1895. The same is true of the Act of January 30, 1897. Each included extracts, compounds, and intoxicants of any kind whatsoever, whether medicated or not. The Act of June 30, 1919, included these by reference. Considering the purpose of these Acts we see no reason to think there was an intent to discriminate between possession in Indian Country or Territory and introduction therein. These Acts must be read together, and a purpose to put possession and introduction on the same footing is not in conflict with the letter. Moreover, under the facts of this case there is authority in support of the district attorney's contention that the Jamaica ginger and apricot extract come within the meaning of the words "intoxicating liquors." 33 C. J. p. 491. It was proven that the Jamaica ginger contained an alcoholic content of 93.5 per cent., and that the apricot extract contained an alcoholic content of 45.2 per cent.; that the ginger was freely used by men, women and younger people as a beverage, first being diluted, and that it produced intoxication; that the apricot extract was capable of being so used and would produce intoxication; that the sale of the ginger constituted a large part, if not the principal part, of the business of many places known as drug stores. There was expert testimony that it was not fit for that purpose because of the physiological reaction of concentrated alcohol and the extreme heat production of concentrated ginger; but the proof of the actual practice was overwhelmingly to the contrary. A deputy sheriff testified that boys and girls, when out on a picnic, would have bottles of Jamaica ginger and bottles of soda pop with them, that they would pour out a little of the soda pop, pour the Jamaica ginger into the bottle and drink it, and were known to become intoxicated from it. A Federal prohibition agent said that from his observation it was a favorite drink in that locality. Sharp had possession of the ginger and apricot extract at his drug store, as a part of his stock. The apricot extract was put up for culinary purposes and was so marked. A part of the inscription on the bottle was this: "A harmless flavoring for plum puddings, sherbets, ice cream, cakes, pies and general culinary purposes. Made from non-beverage alcohol. Sale or use as a beverage will make vendor or user liable. Distributed by Wholesale Brokerage Co., Dallas, Tex." On the bottles of Jamaica ginger was this inscription: "Sterling Brand. Contents 2 fluid ounces U. S. P. Essence Jamaica Ginger 90% alcohol. Double strength. Manufactured by Sterling Extract Co., Inc., New York." It should be said, in justice to Sharp, that he had a stock of drugs and other articles usually carried by druggists. There is no evidence that he was engaged in the practice of selling either for beverage purposes. The case against him, if made on the proof here, would seem to call for leniency.

We think the order appealed from should be affirmed.

It is so ordered.