*1145 OPINION.
Milliken :
The respondent has determined overassessments for the years 1917, 1918, and 1919. Since these overassessments did not result upon the denial of a claim in abatement, the Board is without jurisdiction in this proceeding insofar as it relates to these years, and this appeal, insofar as it involves the taxes for these years, is dismissed. Appeal of Cornelius Cotton Mills, 4 B. T. A. 255. We have, however, the right to determine the facts relating to the transactions in these years or in prior years insofar as such facts affect the deficiencies of the years 1920 and 1921.
The burden of proof rests on petitioner, and, therefore, it was incumbent on it to introduce evidence sufficient to show that respondent erred. This evidence must be competent evidence. The only evidence introduced by the petitioner at the hearing was a printed copy of the agreement of reorganization and the accompanying plan of reorganization of the Pere Marquette Railroad Co.; a pamphlet entitled “ Investor’s Pocket Manual ”; testimony that this book and another entitled “ Standard Statistics ” are used and relied upon in the banking and security trading world; and a proposed stipulation of facts. This stipulation gives the authority for each statement of fact contained therein. Thus it states “ That as of October 30, 1916, there was issued a plan for the reorganization of the company (Pere Marquette Railroad Company, a corporation of *1146 the States of Michigan and Indiana) to form the present Pere Marquette Railway Company, under the laws of Michigan,” and cites as authority for this statement Standard Statistics. The stipulation makes reference to judicial sales, to orders of courts and findings of state commerce commissions and gives the same authority for each statement. Respondent at the hearing admitted that the book in question contains such statements but objected to their admission on the ground that such statements were incompetent to prove the facts in issue. The fact of the incorporation of both the old and new corporations was material and especially was the fact whether the new company was-incorporated under the laws of the same State in which the old corporation was organized. See Marr v. United States, 236 U. S. 536; 5 Am. Fed. Tax Rep. 5393.
No authority has been cited and in our research we have found none which permits the proof of incorporation, of an order of court or of an order of a state commission by statements in trade publications, it matters not how trustworthy such publication may be. It is true, that in a few cases, among which are prices paid and pedigree, trade publications whose integrity have been proven, have been admitted in evidence. In section 1702 of Wigmore on Evidence, the general rule relative to the admission of this secondary evidence is thus stated:
In a few narrow and usually well-defined classes of cases, recognition has been given, by way of exception to the Hearsay rule, to certain commercial and professional lists, registers, and reports. Their admissibility in some instances is placed upon judicial principle, in others arises solely from statutory innovation; but in most of the classes statute has carried out hints originally given judicially.
The necessity in all of these cases lies in part on the usual inaccessibility of the authors, compilers, or publishers in other jurisdictions; but chiefly in the great practical inconvenience that would be caused if the law required the summoning of each individual whose personal knowledge has gone to make up the final result. The necessity therefore is of the sort that is recognized in the preceding two Exceptions, i. e. a practical inconvenience existing generally for the statements as a class; and hence it is not required that the death, insanity, absence from the jurisdiction, or the like, of the author shall be shown before the statement can be used.
We are of the opinion that we should not extend the exception to the hearsay rule beyond the adjudged cases, especially as the necessity, which is the foundation of this exception, is not present in this case. Certified copies of the articles of incorporation, of the orders of the court, and of the order of the state commerce commission could have been easily obtained.
Admitting for the purpose of this opinion that there was but one new corporation and that such entity was in fact incorporated, and that such incorporation was pursuant to the plan of reorganization, *1147 the copy of which is in evidence, it does not follow that we should hold that respondent erred in determining that the reorganization of the Pere Marquette Railroad Co. was a completed transaction resulting in a deductible loss sustained at the time the reorganization was effected.
Petitioner held bonds and notes of the Pere Marquette Railroad Co. After the reorganization it held prior preference stock and common stock of the new company, some of which it acquired in exchange for bonds and the larger part of which it acquired from the purchase syndicate for cash. The rights which petitioner possessed by reason of the ownership of the bonds and notes of the old company were materially different from its rights under the stock of the new company which it acquired. In Appeal of A. J. Siegel, 4 B. T. A. 186, we had before us the question whether taxable gain resulted to certain stockholders on the merger of three national banks. We there said:
Tlie two most recent decisions of the Supreme Court which appear to have a bearing upon the case are Weiss v. Stearn, 265 U. S. 242, and Marr v. United States, 268 U. S. 536. Both of these arose out of reorganizations by which the assets of a corporation were transferred intact to a new corporation. In Weiss v. Stearn, it was held that no taxable transaction took place. In the course of its opinion the court says:
“ We cannot conclude that mere change for purposes of reorganization in the technical ownership of an enterprise, under circumstances like those here disclosed, followed by issuance of new certificates, constitutes gain separated from the original capital interest. Something more is necessary — something which gives the stockholder a thing really different from what he theretofore had.”
In Marr v. United States, the court, holding that a taxable transaction resulted from the reorganization under consideration, said:
“In Weiss v. Stearn, as in Eisner v. Macomber, the transaction was considered, in essence, an exchange of certificates representing the same interest, not an exchange of interests.
“ In the case at bar the new corporation is essentially different from the old.”
Considering these two decisions, it appears that the determining point is not whether the corporate existence continues, but whether the interest of the stockholder changes. In the instant case the interests of the stockholder before the merger and after the merger differed more radically than did the interests of the stockholders in Marr v. United States. What the taxpayer now has is essentially different from that which he had and an exchange has taken place which is properly subject to tax.
In the above proceeding the stockholders of the old company remained stockholders in the merged institution. Here the petitioner, which was a creditor of the Pere Marquette Railroad Co., did not become a creditor of the new company but a stockholder therein. Eespondent did not err in determining that the reorganization proceedings constituted, insofar as petitioner is concerned, a closed *1148 transaction which resulted at the time the reorganization was completed in a deductible loss.
This leaves open petitioner’s alternative complaint to the effect that respondent erred in computing the gain and loss resulting from the sale of its stock in 1920 and 1921. The only error which petitioner now insists upon is that respondent, for the purpose of computing petitioner’s loss in 1917, and in this way fixing the basis for future gain and loss, valued the prior preference stock at $65 per share and the common stock at $23 per share, whereas petitioner asserts that the prior preference stock was worth $74.50 a share and the common stock $38.12% a share.
It is to be observed that respondent determined these valuations as of the year 1917, while the values given in evidence for petitioner were the high and low prices for December, 1916. Petitioner has not shown that respondent erred in treating the reorganization as a closed and completed transaction in the year 1917. It is not shown when the new company was reorganized.
In fact, the copy of Investor’s Pocket Manual filed in evidence indicates that the new company was organized in March, 1917. We refer to this publication merely for the purpose of pointing out that petitioner has not brought into the record any evidence as to when the prospective plan of October 30, 1916, was carried into effect or when the new corporation proposed by that plan was in fact organized. Much less has it shown that these things occurred in the year 1916. Petitioner acquired all its prior preference stock and, it appears, a large amount of its common stock by purchase and the remainder of its common stock by exchange for its refunding mortgage 4’s. There could have been no completed transaction until the new company was organized and capable of issuing the stock. Since petitioner has failed to show that respondent was in error in determining that the transaction was closed and completed in 1917, and since we have no evidence before us other than the findings of the Commissioner as to the value of the common and prior preference stock in that year, we can not hold that respondent erred in his determination of petitioner’s gain and loss resulting from sales made in 1920 and 1921.
The only remaining question is whether respondent erred in the determination of petitioner’s losses in 1921 arising from its sale of bonds of the Chicago & Alton. Petitioner introduced no evidence on this issue. While its counsel, in his opening statement quoted prices bid and asked on March 1, 1913, from Standard Statistics, it did not introduce that publication in evidence, neither did it introduce the testimony of any witnesses relative thereto. The March 1, 1913, value is absent. Without this information we can not deter *1149 mine petitioner’s deductible loss. See Chas. H. Sachs, 6 B. T. A. 68; J. W. Kelly, 6 B. T. A. 1221.
In petition filed it is alleged tbat tbe bonds when purchased in 1909 cost petitioner $80,070. This averment is denied in the answer of respondent in the following words, “ but denies that the cost of said bonds was $80,070 or any sum in excess of $68,850.00.” Petitioner introduced no evidence to support the averment that the bonds cost $80,070 or any other sum. . '

Judgment will be entered for the respondent.

Considered by Maequette, Phillips, and Van Fossan.