UNITED STATES of America

v.

John B. KEMMEL, Frank P. Laurelli, John B. Kemmel, Inc.

Crim. No. 12808.

United States District Court
M. D. Pennsylvania.
March 5, 1958.

Oliver Dibble, Sp. Asst. to Atty. Gen., Robert J. Hourigan, U. S. Atty., Scranton, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., Joseph E. Gallagher, Scranton, Pa., for defendants John B. Kemmel and John B. Kemmel, Inc.

G. Frank DiBona, Philadelphia, Pa., for defendant Frank P. Laurelli.

JOHN W. MURPHY, Chief Judge.

Defendants indicted for violation of 18 U.S.C.A. § 371,[1] move to dismiss, urging (1) the indictment does not state sufficient facts to constitute an offense against the United States; (2) it is duplicitous because it alleges that the conspiracy contemplated the commission of an offense against the United States and to defraud the United States; (3)

1. "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined * * * or imprisoned * * * or both * * * *" "Persons" includes corporations. 1 U.S.C.A. § 1.

defendant John B. Kemmel, Inc., is a corporation and incapable of being a party to a conspiracy.[2]

 Consolidated Construction Co., Inc.,[3] under contract with the United States to construct four warehouses at the Tobyhanna Signal Depot, a military installation in this district, subcontracted painting of the exterior and interior thereof [4] to John B. Kemmel, Inc. Work and material were to be in accord with the prime contract and the drawings and specifications therein,[5] and subject to inspection by a United States representative in charge of construction at the Depot.

John B. Kemmel was President and principal stockholder of John B. Kemmel, Inc.; Frank P. Laurelli, superintendent for the company on the paint job in question.

After averring the foregoing, the indictment charges that on or about September 1952, exact date unknown, and up to and including July 1953 at Tobyhanna in this district, defendants did "unlawfully, wilfully and knowingly, conspire and agree together and with each other, and with divers other persons to the Grand Jury unknown, to commit an offense against the United States, and to defraud the United States, by applying only one coat of paint and in some instances failing to apply any paint to the metal work and structural steel * * * knowing * * * that the provisions of the Government contract * * * required two coats of paint on metal work and structural steel, and one coat of paint before erection on surfaces which will be inaccessible after erection * *."

To effect the object of the conspiracy defendants ordered the painters employed by Kemmel Co., and the painters, pursuant thereto, applied only one coat of paint where two coats were required; no paint at all on some surfaces; all in violation of express provisions of the contract as defendants then and there well knew. Defendant Kemmel on July 27, 1953, caused the company to send its invoice to Consolidated indicating that the painting was completed as specified in the government contract, showing "painting as per contract $98,600" which was "materially false and fictitious, in that the painting of the metal and steel was not completed, as the defendants well knew." It was the plan and purpose of the defendants by the aforesaid means to defraud the United States out of the full performance of its contract and of monies paid and to be paid therefor.

The indictment then charges that in pursuance of the conspiracy and to effect the objects thereof, defendants committed inter alia five overt acts: (a) September 1952 at Tobyhanna, Laurelli ordered one McNeill, a painter employed by Kemmel Co., not to paint the entire T-rails but just the bottom thereof; (b) January 1953, Laurelli boasted to Anthony J. Gegeckas, an electrical inspector at the Depot, that Kemmel was "going to beat putting the second coat on * * * no painter * * * can tell if one or two coats were applied"; (c) Kemmel caused Kemmel Co. to send its invoice to Consolidated: May 27, 1953, showing "work completed to date $93,-100"; (d) June 30, 1953, "Painting General Purpose Warehouses, Tobyhanna, Pa., $98,000"; (e) July 27, 1953, "Painting as per Contract, $98,600".

In United States v. Gilboy, D.C., 162 F.Supp. 384, we discussed at some length the requirements of an indictment charging a violation of § 371. We shall not repeat that discussion here

2. Laurelli's motion to dismiss because of the statute of limitations was withdrawn. As to its lack of merit, see United States v. Gilboy, infra.

3. Later Consolidated Construction Co. of New Jersey, Inc.

4. Contract price $90,000—with additions $98,600.

5. Exterior on certain designated surfaces, two coats of oil paint; interior id., abraded spots touched up and then two coats of flat oil paint; surfaces inaccessible after erection, one field coat of iron oxide paint.

except to state that we have reexamined it in the light of the present indictment and find that the latter meets those tests.

■ As to defendants' second reason, supra, "The conspiracy is the crime, and that is one, however diverse its objects." Frohwerk v. United States, 1919, 249 U.S. 204, at page 210, 39 S.Ct. 249, 252, 63 L.Ed. 561; Braverman v. United States, 1942, 317 U.S. 49, at page 54, 63 S.Ct. 99, 87 L.Ed. 23; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, at page 839; May v. United States, 1949, 84 U.S.App.D.C. 233, 175 F.2d 994, at page 1002; United States v. Anthony, D.C.M.D.Pa.1956, 145 F.Supp. 323, at page 329.

■ The idea that a corporation cannot commit a crime has long since been rejected. New York Central & H. R. R. Co. v. United States, 1909, 212 U.S. 481, 492, 29 S.Ct. 304, 53 L.Ed. 613; United States v. Union Supply Co., 1909, 215 U.S. 50, at page 54, 55, 30 S.Ct. 15, 54 L.Ed. 87; Joplin Mercantile Co. v. United States, 8 Cir., 1914, 213 F. 926, at pages 935, 936 (conspiracy), affirmed 1915, 236 U.S. 531, 35 S.Ct. 291, 59 L.Ed. 705; Mininsohn v. United States, 3 Cir., 1939, 101 F.2d 477, at page 478 (conspiracy); Kaufman v. United States, 2 Cir., 1914, 212 F. 613, at page 617; United States v. Nearing, D.C.S.D.N.Y. 1918, 252 F. 223, at page 231, L. Hand, J. (conspiracy); United States v. American Socialist Soc., D.C.S.D.N.Y.1919, 260 F. 885, at page 887, and see Vol. 10, Fletcher Cyclopedia Corporations, Perm. Ed., §§ 4942, 4951, 4884; 13 Am.Jur. Corporations, § 1132, 19 C.J.S. Corporations § 1364.

As to the propriety of joining a corporation, its officers and agents in a charge of conspiracy, see New York Central & H. R. R. Co. v. United States, supra, 212 U.S. at page 497, 29 S.Ct. at page 308; Mininsohn v. United States, supra, 101 F.2d at page 478; Egan v. United States, 8 Cir., 1943, 137 F.2d 369; Miller v. United States, 6 Cir., 1942, 125 F.2d 517, 518; United States v. MacAndrews & Forbes Co., C.C.S.D.N.Y. 1906, 149 F. 823 at pages 832, 833; Unit-

ed States v. General Motors Corp., 7 Cir., 1941, 121 F.2d 376, at page 411; American Medical Ass'n v. United States, 1942, 76 U.S.App.D.C. 70, 130 F.2d 233, at page 253, affirmed 1943, 317 U.S. 519, at pages 526, 528, 63 S.Ct. 326, 327, 87 L.Ed. 434; United States v. Austin-Bagley Corp., 2 Cir., 1929, 31 F.2d 229, at page 233; White Bear Theatre Corp. v. State Theatre Corp., 8 Cir., 1942, 129 F.2d 600; United States v. Wilson, D.C.W.D.Wash.1932, 59 F.2d 97; Zito v. United States, 7 Cir., 1933, 64 F.2d 772, and see Nash v. United States, 1913, 229 U.S. 373, at page 379, 33 S.Ct. 780, 57 L.Ed. 1232. Likewise where there are two corporations having common ownership and control. Timken Roller Bearing Co. v. United States, 1951, 341 U.S. 593, at page 598, 71 S.Ct. 971, 95 L.Ed. 1199; cf. Hudson Sales Corp. v. Waldrip, 5 Cir., 1954, 211 F.2d 268, at page 273.

As to the agents per se, see Kaufman v. United States, supra, 212 F. at page 617, discussing Cohen v. United States, 2 Cir., 1907, 157 F. 651; United States v. General Motors Corp., supra, 121 F.2d at page 411; Nash v. United States, supra, 229 U.S. at page 379, 33 S.Ct. 780.

As to the basis and scope of corporate liability, see New York Central & H. R. R. Co. v. United States, supra, 212 U.S. at page 493, 29 S.Ct. 304; United States v. Nearing, supra, 252 F. at page 231, "It is a question upon which the law has always tended toward larger and larger liability." Egan v. United States, supra, 137 F.2d at page 379; Joplin Mercantile Co. v. United States, supra, 213 F. at page 936; Mininsohn v. United States, supra, 101 F.2d at page 478, and see Note 60 Harv.L.Rev. 283. Defendant cites Holland Furnace Co. v. United States, 6 Cir., 1946, 158 F.2d 2. That case must be limited to its own facts. See and cf. United States v. Armour & Co., 3 Cir., 1948, 168 F.2d 342, at page 344; United States v. George F. Fish, Inc., 2 Cir., 1946, 154 F.2d 798, at page 801.

Section 371 provides, "If two or more persons conspire * * * and one or more of such persons do any act to ef-

fect the object of the conspiracy * *." A corporation is a person. 1 U.S.C.A. § 1, 13 Am.Jur., supra, § 1135, 19 C.J.S. Corporations § 1360. In Nelson Radio & Supply Co., Inc., v. Motorola Inc., 5 Cir., 1952, 200 F.2d 911, at page 914, only the corporation was actually named. Obviously it could not conspire with itself. Mackey v. Sears Roebuck & Co., 7 Cir., 1956, 237 F.2d 869, at page 873. In Times-Picayune Publishing Co. v. United States, 1953, 345 U.S. 594, at page 626, 73 S.Ct. 872, 97 L.Ed. 1277, a charge of unlawful concert among the corporate officers was abandoned. In United States v. Lorain Journal Co., D.C. E.D. Ohio 1950, 92 F.Supp. 794, at pages 798–800, joint liability was not decided. The Nelson case admits the possibility of a conspiracy between a corporation and its agents or employees; and see dissent Rives, J., 200 F.2d at pages 916–918, and cf. United States v. New York Great A. & P. Tea Co., D.C.E.D.Ill.1946, 67 F. Supp. 626, at page 637.[6]

 As to the doctrine of merger of offenses, see Pinkerton v. United States, 1946, 328 U.S. 640, at page 643, 66 S.Ct. 1180, 90 L.Ed. 1489; United States v. Anthony, D.C.M.D.Pa.1956, 145 F.Supp. 323, at page 330. An indictment may include the known and the unknown. United States v. Harrison, 3 Cir., 1941, 121 F.2d 930, at page 934; Pomerantz v. United States, 3 Cir., 1931, 51 F.2d 911, 913; United States v. Hamilton, C.C.S. D.Ohio, 26 Fed.Cas.No. 15,288, p. 90; United States v. General Motors Corp., supra, 121 F.2d at page 411; United

States v. Weinberg, D.C.M.D.Pa.1955, 129 F.Supp. 514, at page 527; United States v. Fox, 3 Cir., 1942, 130 F.2d 56, at page 58.

 The present indictment charges that Kemmel, Laurelli, the corporation, and others to the grand jury unknown, conspired. Assuming, as we must on a motion to dismiss, the allegations of the indictment to be true, we hold that a conspiracy as to the corporation and others has been properly charged.

---

6. Marion County Co-op. Ass'n v. Carnation Co., D.C.W.D.Ark.1953, 114 F.Supp. 58, at pages 62–63, cites Nelson for more than it holds and asserts a uniformity which does not exist. Cf. Beacon Fruit & Produce Co., Inc., v. H. Harris & Co. Inc., D.C.D.Mass.1957, 152 F.Supp. 702, at page 704; Nash v. United States, supra, 229 U.S. at page 379, 33 S.Ct. 780.

United States v. Carroll, D.C.S.D.N.Y. 1956, 144 F.Supp. 939, at page 942, holds that a corporation and its principal officer could not conspire; but see Boyd v. United States, 4 Cir., 1921, 275 F. 16. The Carroll case concedes the possibili-

ty of a conspiracy where there is concert between the corporation and those not members of the corporation. Cf. Caldwell-Clements Inc. v. Cowan Publishing Corp., D.C.S.D.N.Y.1955, 130 F.Supp. 326, at page 328. Sperry Rand Corp. v. Nassau Research & Development Associates Inc., D.C.E.D.N.Y.1957, 152 F.Supp. 91, at page 93, is out of line with the authorities, supra. Windsor Theatre Co. v. Wallbrook Amusement Co., D.C.D.Md.1950, 94 F.Supp. 388, at page 396, affirmed 4 Cir., 1951, 189 F.2d 797, at page 799, lacked evidence of conspiracy.