### AMMERMAN et al. v. UNITED STATES. *

(Circuit Court of Appeals, Eighth Circuit. August 23, 1920.)

No. 5507.

1. **Indians ☞35—Oklahoma Enabling Act repealed Indian Liquor Shipment Act as to intrastate shipments.**

Act March 1, 1895, § 8 (Comp. St. § 4136b), prohibiting the carrying of intoxicating liquors into Indian Territory, was impliedly repealed, so far as relates to intrastate shipments, by Enabling Act Okl. § 3, giving the state authority to punish such shipments.

2. **Indians ☞35—Oklahoma Enabling Act did not repeal Indian Liquor Shipment Act as to interstate shipments.**

Enabling Act Okl. § 3, giving the state jurisdiction to prohibit the sale of intoxicating liquors in Indian Territory and the shipment of such liquors into the territory, did not impliedly repeal Act March 1, 1895, § 8 (Comp. St. § 4136b), prohibiting the transportation of intoxicating liquor into Indian Territory, in so far as it related to interstate shipments which were not subject to the jurisdiction of the state.

3. **Indians ☞35—Indian Liquor Shipment Act, applying only to interstate shipments, not unconstitutional.**

Act March 1, 1895, § 8 (Comp. St. § 4136b), prohibiting transportation of intoxicating liquor into Indian Territory, since its limitation to interstate shipments by Oklahoma Enabling Act, does not violate Const. art. 1, § 9, by discriminating against the state of Oklahoma, or by giving that state a preference, inasmuch as it has authority to regulate shipments of such liquor into the Indian Territory.

4. **Indians ☞35—Webb-Kenyon Act did not repeal Indian Shipment Act.**

The Webb-Kenyon Act (Comp. St. § 8739), divesting intoxicating liquors of interstate character in certain cases, did not, since Rev. Laws Okl. 1910, § 3605, made shipments into the state unlawful, repeal Act March 1, 1895, § 8 (Comp. St. § 4136b), prohibiting interstate shipments of intoxicating liquor into the Indian Territory, especially in view of the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), imposing a penalty for illegal shipments.

5. **Witnesses ☞48(1)—Previous conviction of felony does not disqualify.**

In a prosecution for conspiracy, it was not error to permit a witness to testify for the government over the objection that he had theretofore been convicted of a felony.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Criminal law ⊜⇒444—Invoices held admissible, without direct proof of conformity to orders and shipments.**

In a prosecution for conspiracy to ship intoxicating liquors into Indian Territory, where the evidence showed that triplicate invoices were made by the wholesale dealer when orders were received by defendants, and that the duplicate invoice was sent to defendant and the triplicate used by the shipping clerk in filling the order, and that defendant during a long course of business made no objection that the shipments did not conform to the orders or the duplicate invoices furnished, it was not error to admit the original and triplicate invoices in evidence, without calling clerks to testify that the invoice conformed to the order and that the liquor called for thereby had been shipped.

7. **Criminal law ⊜⇒829(1)—Refusal of requests not error, where charge fairly presented case.**

Where the charge of the court in a criminal prosecution fairly presented the case, it was not prejudicial error to refuse instructions requested by accused, even if accused were entitled to instructions in the language requested.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

R. L. Ammerman and others were convicted of conspiracy to carry intoxicating liquor from the state of Missouri into that part of Oklahoma which had been Indian Territory, and they bring error. Affirmed.

E. G. McAdams, of Oklahoma City, Okl., for plaintiffs in error.

Herman S. Davis, Asst. U. S. Atty., of Frederick, Okl. (Herbert M. Peck, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before HOOK and STONE, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. Plaintiffs in error were convicted in the court below on an indictment charging them, under section 37 of the Penal Code (Comp. St. § 10201), with a conspiracy to violate the Act of March 1, 1895, § 8, 28 Statutes at Large, 697 (Comp. St. § 4136b), by introducing and carrying from without the state of Oklahoma—to-wit, from the city of Joplin, in the state of Missouri, into that part of Oklahoma which prior to its admission as a state was Indian Territory—intoxicating liquors, namely, whisky, etc. The indictment alleges numerous overt acts. Plaintiffs in error, whom we shall hereafter call defendants, demurred to the indictment on the ground that it failed to state a public offense. The same question was raised at the close of the trial by motion for a directed verdict.

The defendants have assigned the overruling of their demurrer and the refusal to direct a verdict in their favor at the conclusion of the trial as error. To understand the questions raised by these assignments it is necessary to have in mind certain parts of the Act of March 1, 1895, and of the Enabling Act of the state of Oklahoma. Section 8 (the part material here) of the Act of March 1, 1895, is as follows:

"Any person * * * who shall carry, or in any manner have carried into said territory [Indian] any such liquors or drinks (intoxicating), or who shall be interested in * * * carrying into said territory any of such liquors or drinks, shall, upon conviction thereof, be punished," etc.

The Enabling Act of Oklahoma (34 Statutes at Large, 267) contains the following:

"Sec. 3. * * * And said convention shall provide in said Constitution—

 *     *     *     *     *     *     *     *     *     *     *

"That the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within those parts of said state now known as the Indian Territory and the Osage Indian reservation and within any other parts of said state which existed as Indian reservations on the first day of January, nineteen hundred and six, is prohibited for a period of twenty-one years from the date of the admission of said state into the Union, and thereafter until the people of said state shall otherwise provide by amendment of said Constitution and proper state legislation. Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, including beer, ale, and wine, contrary to the provisions of this section, or who shall, within the above-described portions of said state, advertise for sale or solicit the purchase of any such liquors, or who shall ship or in any way convey such liquors from other parts of said state into the portions hereinbefore described, shall be punished, on conviction thereof, by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense. * * *

"Upon the admission of said state into the Union these provisions shall be immediately enforceable in the courts of said state."

The first section of said Enabling Act, after providing that:

"The inhabitants of all that part of the area of the United States now constituting the territory of Oklahoma and the Indian Territory, as at present described, may adopt a Constitution and become the state of Oklahoma, as hereinafter provided"

—contains this proviso:

"Provided, that nothing contained in the said Constitution shall be construed to limit or impair the rights of person or property pertaining to the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed."

[1] The defendants state their first contention in the following language:

"The provisions of section 3 of the Oklahoma Enabling Act (34 Stat. 267), requiring the state of Oklahoma to forbid, under penalties, the introduction of intoxicating liquor from other parts of the state into the former Indian Territory, can be upheld only by construing it as repealing section 8 of the Act of March 1, 1895 (28 Stat. 697), in so far as that act dealt with such intrastate transactions. Otherwise, the provision of the Enabling Act must be held to be repugnant to article 1, section 8, Const. U. S., as an attempt to authorize the concurrent regulation of commerce which must be exclusively regulated either by state or nation. The Enabling Act is susceptible of a reasonable construction, which will avoid such conflict with the Constitution."

Upon the question of the introduction of intoxicating liquors from other parts of the state of Oklahoma into former Indian Territory,

the Supreme Court of the United Etates in Joplin Mercantile Co. v. United States, 236 U. S. 546, 547, 35 Sup. Ct. 291, 297 (59 L. Ed. 705), said:

"Without deciding that such control must necessarily be exclusive of co-existing federal jurisdiction over the same subject-matter, it seems to us that concurrent jurisdiction would be productive of such serious inconvenience and confusion, that, in the absence of an express declaration of a purpose to preserve it, we are constrained to hold that the active exercise of the federal authority was intended to be at least suspended pending the exertion by the state of its authority in the manner prescribed by the Enabling Act. * * * Our opinion upon this branch of the case is that, pending the continuance of state prohibition as prescribed by the Enabling Act, the provisions of the act of 1895 respecting intrastate transactions are not enforceable."

[2] Defendants' second contention is:

"The Act of March 1, 1895, having been superseded as to intrastate transactions by the Enabling Act, it is beyond the power of Congress to continue the former act in force as to interstate transactions."

The contention that—the Act of March 1, 1895, having been superseded as to intrastate transactions by the Enabling Act—it is beyond the power of Congress to continue the Act of March 1, 1895, in force as to interstate transactions, cannot be sustained. The Supreme Court of the United States has decided otherwise. In Ex parte Webb, 225 U. S. 682, 691, 32 Sup. Ct. 776, 779 (56 L. Ed. 1248), that court said:

"In view of these considerations, and others to be mentioned, it seems to us that Congress, so far from intending by the Enabling Act to repeal so much of the act of 1895 as prohibits the carrying of intoxicating liquors into the Indian Territory from points without the state, framed the Enabling Act with a clear view of the distinction between the powers appropriate to be exercised by the new state over matters within her borders, and the powers appropriate to be exercised by the United States over traffic originating beyond the borders of the new state and extending within the Indian Territory. * * * The power of Congress to regulate commerce between the states, and with Indian tribes situate within the limits of a state, justifies Congress, when creating a new state out of territory inhabited by Indian tribes, and into which territory the introduction of intoxicating liquors is by existing laws and treaties prohibited, in so legislating as to preserve those laws and treaties in force to the extent of, excluding interstate traffic in intoxicating liquors that would be inconsistent with the prohibition. Dick v. United States, 208 U. S. 340, 353. This being so, and since we find in the Oklahoma Enabling Act no repeal, express or implied, of the act of 1895 so far as pertains to the carrying of liquor from without the new state into that part of it which was the Indian Territory (saving as to liquor brought in by the state for the use of state agencies established under the provisions of the Enabling Act), it follows, upon the admitted facts, that the United States District Court has jurisdiction to punish the petitioner for the offense that he has committed."

[3] The third contention of the defendants, as stated by them, is:

"It cannot be sustained as an exercise of the power of Congress to regulate interstate commerce, because it discriminates against the ports of the state of Oklahoma, by forbidding transportation of liquor into Oklahoma from other states, while permitting the unrestricted transportation of liquor into the other states of the Union. It cannot be sustained as an exercise of the power of Congress to regulate commerce with the Indian tribes, because it gives a preference to the ports of the state of Oklahoma by permitting that state

to regulate for itself the commerce in intoxicating liquors between the people of other parts of the state and the former Indian Territory, while denying to the people of all other states the right to engage in such commerce under penalty of fine and imprisonment."

The contention raised by the defendants in the above proposition was argued to the Supreme Court of the United States in the Joplin Mercantile Co. Case. The question is referred to in the opinion, and in the course of the opinion it is stated:

"And it is said that this question is not foreclosed by the decision in the Webb Case sustaining the act as to interstate transactions, because—and this is true—the question under section 9 of article 1 of the Constitution was not then raised."

In this connection the court says:

"It is next argued that, the act of 1895 having been superseded as to intrastate transactions by the Enabling Act, it is beyond the power of Congress to continue it in force as to interstate transactions, and this for two reasons, both based upon the provision of section 9 of article 1 of the Constitution that 'no preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another': (a) That the prohibition cannot be maintained as an exercise of the power to regulate interstate commerce, because in that aspect it discriminates against the state of Oklahoma by forbidding transportation of liquor into that state from without, while permitting the unrestricted transportation of liquor into the other states; and (b) that it cannot be sustained as an exercise of the power of Congress to regulate commerce with the Indian tribes because it gives a preference to the state of Oklahoma by permitting that state to regulate for itself the commerce in intoxicating liquors between the people of other parts of the state and the former Indian Territory, while denying to the people of all the other states the right to engage in such commerce with the same territory. The result sought to be deduced is that, by reason of the passage of the Enabling Act and the admission of the state thereunder, the act of 1895 cannot be sustained at all. It is said this does not impute to Congress the purpose to pass an act in excess of its powers under the Constitution; that the act when passed was justified not only as a regulation of commerce with the Indian tribes but as an exercise of jurisdiction over territory then within the exclusive jurisdiction of the United States; and that it is now unconstitutional as to interstate transactions, not because of the want of power in Congress to originally pass it, but because of the changed conditions growing out of the admission of the state under an Enabling Act inconsistent with the continuance in force of the act of 1895. And it is said that this question is not foreclosed by the decision in the Webb Case sustaining the act as to interstate transactions, because—and this is true—the question under section 9 of article 1 of the Constitution was not then raised [citing Boyd v. Alabama, 94 U. S. 645, 648]. The reasoning, like the opposed reasoning of the court below, has force; but we think it has also elements of weakness. Thus—to mention only one or two of these—it is not easy to see how any practical preference is given to the state of Oklahoma in the way of permitting commerce in intoxicating liquors to be conducted between other portions of the state and the former Indian Territory while denied to the people of other states, when the very clause of the Enabling Act that operates, if any, does, to destroy the former universality of the act of 1895, does not permit, but prohibits, commerce in liquors between the one part of the state and the other; the only difference here important being that as to internal commerce the state enforces the prohibition, while as to interstate commerce, it is enforced by the United States. Nor is the suggestion convincing that the act of 1895 (if repealed as to intrastate commerce only) remains as a discriminatory regulation of commerce between the states unfavorable to Oklahoma; for in this aspect it forbids not the introduction of liquors from other states into Oklahoma, but only

their introduction into that particular part of it which, because of the larger population of Indians that it contains, and because of the previous treaties and the other circumstances pointed out in the Webb Case, Congress deemed to be properly entitled to that protection. Moreover, supposing that unconstitutional preferences must be deemed to arise from a partial repeal of the act of 1895 by the prohibitory provision of the Enabling Act, it would, we think, be more logical to avoid the constitutional difficulties by giving less force to that provision of the Enabling Act than by giving to it a force quite beyond the expressed purpose of Congress. The result would be, if the argument of petitioners as to the impossibility of concurrent regulation of intrastate transactions in liquors with the former Indian Territory by state and nation is sound, that the state prohibition of the liquor traffic in the territory and between the other parts of the state and the territory would have to remain in abeyance until Congress should expressly repeal the act of 1895."

We do not deem it necessary to enlarge upon the reasons suggested by the Supreme Court in the Joplin Mercantile Co. Case against the contention of the defendants made in this case. The contention of the defendants that the Act of March 1, 1895, is unconstitutional under section 9 of article 1 of the Constitution of the United States cannot be allowed.

[4] The defendants further urge that the trial court erred in overruling their demurrers to the indictment and denying their motion to direct a verdict in their favor, for the reason that the Webb-Kenyon Act (37 Stat. 699 [Comp. St. § 8739]), entitled as an act divesting intoxicating liquors of their interstate character in certain cases repealed by implication the Act of March 1, 1895, or at least suspended the operation of said act, the moment the state of Oklahoma enacted laws covering the matters and things set forth in the Webb-Kenyon Act, and they cite in support of their position Witte v. Shelton, 240 Fed. 265, 153 C. C. A. 191, a case in this court in which the opinion was written by Judge Sanborn. They also cite section 3605 of the Revised Laws of 1910 of the state of Oklahoma, in which there is a clause similar to that clause of the Act of March 1, 1895, above quoted, and upon which the indictment was based. This clause reads:

"Or to ship or in any way convey such liquor (meaning intoxicating liquors), from one place within this state to another place therein * * * shall be a misdemeanor," etc.

The argument is, as expressed by counsel in their brief:

"While the Webb-Kenyon Act does not repeal the act of 1895 by express language, yet it suspends its operation the very moment the state of Oklahoma enacted laws covering the matters and things therein set forth, and we believe that the statutes of Oklahoma here quoted sustain our position. Upon this point we respectfully refer this honorable court to the opinion in Joplin Mercantile Co. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. 705, and the opinion of this court in Witte v. Shelton, 240 Fed. p. 265, 153 C. C. A. 191."

The conclusion of the argument is that the effect of the Webb-Kenyon Act is:

"(a) To vest the several states with power to regulate the transportation (after crossing the state line), delivery and the use of liquor shipped into such state, in all cases where the consignee or other persons interested therein intend to sell or otherwise deal with such liquors in violation of the law of the state; and

(b) To renounce federal power and jurisdiction over such commerce in all cases where, by reason of the intent of such consignees the states were entrusted with the power of regulation."

The second postulate upon which the argument that the Webb-Kenyon Act repealed the act of 1895 rests cannot be admitted. It assumes that Congress in passing the Webb-Kenyon Act renounced federal power and jurisdiction over interstate commerce in all cases where by reason of the intent of the consignees the states were entrusted with the power of regulation of intoxicating liquors, and it assumes that the Webb-Kenyon Act—which removed, and was only intended to remove, the protection of the commerce clause of the Constitution from intoxicating liquors in certain cases—had the effect of repealing by implication the act of 1895 passed by Congress for a special purpose and pursuant to its treaty and guardianship obligations for the protection of the Indians of Indian Territory. Such an effect we do not concede. In the Joplin Mercantile Co. Case the Supreme Court, in discussing the effect of the Enabling Act upon the act of 1895, said:

"Reading the Enabling Act as a whole in the light of this situation, including the declaration in its first section of the continued authority of the government of the United States respecting the Indians, the specific requirement in the third section that the state Constitution should contain a stringent prohibition of the manufacture, sale, etc., of intoxicating liquors within the Indian Territory and the reservations for a period of 21 years from the date of admission, and thereafter until amendment of the Constitution, and the express provision that any person who should manufacture, etc., or should ship or convey such liquors from other parts of the state into the Indian Territory or reservations should be punished both by fine and imprisonment, we think the inference is irresistible that it was the purpose of Congress that the people of the state should be entrusted with actual power and control over the liquor traffic between the other portions of the state and the territory and reservations, and that, for the time at least, they should have the same control that is enjoyed by other states; it being, of course, subject to the effect of the acts of 1892 and 1897."

It will be noted that in this paragraph the court makes use of the terms "specific requirement" and "express provision." In Ex parte Webb the Supreme Court discusses and emphasizes the duties and obligations imposed upon the government in its relation with the Indians and Indian tribes arising out of treaties, and the relationship of guardian and ward existing between the government and the Indian. These same relations existed on March 1, 1913, the date of the Webb-Kenyon Act, and in the Webb-Kenyon Act we find neither specific requirement nor express provision that would require or presume the repeal by implication of the act of 1895.

We find subsequent legislation of Congress out of harmony with the claimed renunciation relied upon as a foundation for the contention that the Webb-Kenyon Act repealed the Act of 1895. The Reed Amendment of March 3, 1917 (39 Stat. 1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a]), makes it a misdemeanor and prescribes a penalty for doing substantially the very things which the Webb-Kenyon Act only prohibited, and the effect of which was, as

expressed by its title, to divest intoxicating liquors of their interstate character in certain cases.

If, as argued by the defendants, the Webb-Kenyon Act was a renunciation by Congress of federal power and jurisdiction over interstate commerce in intoxicating liquors in certain cases, then the Reed Amendment must be held to be a resumption of this power and jurisdiction, with the result that the Webb-Kenyon Act was repealed by implication by the Reed Amendment. The language of Judge Sanborn in the Witte Case may be adopted and applied to this case. His language is:

"It [the Webb-Kenyon Act] contains no express repeal of it [here the act of 1895], and it makes no reference to it. If it is repealed, therefore, the repeal is by implication, and such a repeal is not presumed. It is only when the later statute is so repugnant to or inconsistent with the earlier one that it is clear that the intention of the legislative body must have been thereby to repeal the former that a repeal by implication may be lawfully inferred. 'To induce a repeal of a statute by the implication of inconsistency with a later statute, there must be such a positive repugnancy between the two statutes that they cannot stand together.' Arthur v. Homer, 96 U. S. 137, 140, 27 L. Ed. 811; Gowan v. Harley, 56 Fed. 973, 978, 6 C. C. A. 190, 195."

Our opinion is that the act of 1895 was not repealed by the Webb-Kenyon Act.

[5] At the trial one M. F. Witte testified as a witness for the govenment. The defendants objected that the witness was disqualified on the ground that he had theretofore been convicted of a felony. The ruling is assigned as error and is presented in the brief of the defendants, though not argued, and is submitted upon the ruling of the Supreme Court in the case of Rosen v. United States, 245 U. S. 467, 38 Sup. Ct. 148, 62 L. Ed. 406. This assignment is overruled.

[6] Error is also assigned upon the admission in evidence of certain exhibits offered by the government which were objected to on the ground that proper foundation had not been laid for their admission. The defendants cite Phillips v. United States, 201 Fed. 259, 120 C. C. A. 149, a decision by this court in which the opinion was written by Judge Carland. We have carefully read and considered the opinion in the Phillips Case and are in accord with the rules of evidence as therein stated. This case, however, does not fall within the rules there announced.

The exhibits objected to in this case were original and triplicate copies of invoices of shipments made by the Joplin Mercantile Company of the liquors which the defendants, in the overt acts set out in the indictment, were charged with having carried from Joplin, Mo., and introduced into that portion of the state of Oklahoma which formerly had been Indian Territory. The witness Witte was the office and sales manager of the Joplin Mercantile Company engaged in the wholesale liquor business at Joplin, Mo., at the time of the transactions mentioned in the indictment. The business was carried on in this way: The defendant R. L. Ammerman resided at Keystone, a small village situated in the state of Oklahoma, just across the line from what had formerly been Indian Territory. He had in his service apparently practically all of the male and some of the

female inhabitants of the village. Liquors were ordered by him in their names from the Joplin Mercantile Company. The liquors were shipped by express from Joplin to Keystone, and there delivered by the express agent to the nominal purchasers, who immediately delivered the liquors received by them to R. L. Ammerman, and were paid by him so much per gallon or per barrel for the use of their names. This business was carried on and conducted in this way during the years 1915, 1916, and until the early part of February, 1917.

Orders for liquors were sent in by R. L. Ammerman practically daily, sometimes by the use of the telephone, sometimes by letters sent through the mail, but always in the name of the various parties who were employed by him for that purpose. These orders were received by the witness Witte. If received by telephone, he reduced them to writing. The orders received through the mail were usually accompanied by a check or draft, post office money order, or express money order, in payment. The witness Witte turned over the orders made out by him or received by him with the accompanying drafts, etc., to his billing clerk. The clerk made three invoices of each order—one copy being an original, and the other two being carbon copies. Upon the original the billing clerk noted the number of the draft, if any, accompanying the order, and placed it in the office files. The triplicate was delivered to the shipping clerk, who filled the order. The shipping clerk noted on the triplicate the data required in making up the government forms, showing the stock taken in filling the order, and the same was filed in his office. The duplicate invoice was sent to the defendant R. L. Ammerman. The witness Witte identified the original and the triplicate invoices as papers in the office and among the files of the Joplin Mercantile Company, made under his supervision and during the time that he was manager of the business of the company, and stated that they evidenced the business carried on between the company and the defendant Ammerman, and showed the liquors shipped by the company to the various parties named in the invoices for Ammerman's account. He did not see the invoices made by the billing clerk, but always and immediately after the shipments (within a day or two) checked the original invoices, to see that they were correct and corresponded to the orders. He did not assist the shipping clerk in filling the orders, and did not know of his own personal knowledge by inspection that the liquors were in fact packed and delivered by the billing clerk to the express company, although he was usually present at the time of such delivery.

The invoices were received in evidence over the objection of the defendants, and this ruling of the trial court is assigned as error. The grounds of the objection and assignment as error are, in effect, that said invoices were incompetent, for the reason that the billing clerk who made the invoices had not been called to prove that they corresponded to the orders, and that the shipping clerk who packed and delivered for shipment the goods named in the invoices had not been called to prove that the liquors mentioned in the triplicate invoices which he handled had been in fact packed and shipped, and that the notations made by him on said triplicate invoices were correct.

It is undoubtedly true that the method suggested by the objections to the invoices could have been pursued; but it does not follow that this method is exclusive, or that the invoices could not be rendered competent by other evidence in the case. It appears from the record in the case, as already stated, that this business was carried on for two years or more, and shipments made almost daily. In the great majority of cases remittances accompanied the orders. In all cases the duplicate invoice was sent to and received by the defendant R. L. Ammerman, who was the manager in this illicit trade and business. For two years and more settlements had been made upon invoices received by him, where payment had not been made in advance, without question or dispute, with one exception. The record contains the correspondence of the defendant R. L. Ammerman and the Joplin Company about certain shipments standing upon the books of the company as unpaid. The result of the correspondence was that after the parties had fully checked the items it appeared that certain remittances had been lost, or at least not received by the Joplin Mercantile Company. Duplicate drafts were issued by the bank, which had drawn the drafts, and the accounts closed. It is reasonably certain from the record that neither the defendant R. L. Ammerman, nor any one associated with him, ever made any claim that the shipments did not correspond to the orders or the duplicate invoices sent representing the same. We think the facts appearing on the face of the record render the original and triplicate invoices competent as evidence of the shipment and receipt of the liquors in said invoices mentioned.

[7] The defendants requested the trial court to give certain instructions, which it refused. We have carefully compared the instructions given by the court with the requests submitted by the defendants, and are of opinion—assuming the defendants were entitled to the instructions in the language requested—that the trial court, in the instructions given by him, fairly presented the case to the jury, and that the defendants were not prejudiced by the refusal of the court to give the requested instructions.

The judgment of the court below must be affirmed; and it is so ordered.