## BAUGH v. UNITED STATES.*

Circuit Court of Appeals, Ninth Circuit.
June 18, 1928.

No. 5437.

1. Automobiles ⟨⟩354—Conspiracy ⟨⟩45—Evidence as to defendant's association with person who had induced him to buy automobile held admissible in prosecution for receiving and concealing stolen automobile (Motor Vehicle Theft Act, §§ 3, 4 [18 USCA § 408]; Penal Code, § 37 [18 USCA § 88]).

In prosecution under Motor Vehicle Theft Act, §§ 3, 4 (18 USCA § 408), and Penal Code, § 37 (18 USCA § 88), for receiving and concealing stolen automobile transported in interstate commerce and for conspiracy to conceal and to receive such automobile, testimony as to the relations between defendant, who had purchased the car and one with whom he had been in close association, and who had been active in inducing sale thereof to such defendant, *held* admissible, though such evidence showed such person's implication in theft of other automobile and his apprehension in act of transporting liquor.

2. Conspiracy ⟨⟩45—Criminal law ⟨⟩422(1)—As to codefendants or conspiracy, evidence is admissible if, when considered as composite whole, circumstances have requisite probative value.

Where there is more than one defendant, and particularly where conspiracy is charged, evidence must be received on theory, not that necessarily each bit of it is, when considered by itself, material or competent as to all defendants, but that, when fitted together and considered as a composite whole, the circumstances have the requisite probative value.

3. Conspiracy ⟨⟩47—Proof must generally be measurably circumstantial in conspiracy prosecution.

In prosecution for conspiracy, proof must generally be measurably circumstantial.

4. Conspiracy ⟨⟩43(5)—Averment of overt act is not ordinarily intended to be a statement of object of conspiracy.

Ordinarily, the averment of an overt act is not intended to be a statement of the object of the conspiracy.

*Rehearing denied August 6, 1928.

**5. Conspiracy ☞48—Instruction as to overt acts held not misleading in prosecution of receiver of stolen automobile for conspiracy.**

In prosecution of receiver of stolen automobile for conspiracy, instruction as to overt acts *held* not misleading, as against contention that jury understood therefrom that overt acts referred to constituted the offense charged.

**6. Automobiles ☞356—When stolen automobile ceased to be in interstate commerce held for jury.**

In prosecution for receiving and concealing stolen automobile transported in interstate commerce and for conspiracy to commit such crimes, the question of when the car ceased to be in interstate commerce *held* for the jury.

**7. Criminal law ☞778(3)—Court was not required to instruct jury not to be influenced by number of counts, where there were only two counts.**

Where there were only two counts against defendant, there was no occasion for instruction that jury should not be influenced by number of counts.

**8. Criminal law ☞776(2)—Instruction relating to testimony as to defendant's reputation held sufficient.**

Instruction as to testimony that defendant had borne a good reputation for honesty and integrity *held* sufficient.

**9. Criminal law ☞811(2)—Instruction that testimony as to defendant's reputation may alone create reasonable doubt would give undue prominence to only one circumstance.**

An instruction relating to testimony as to a defendant's reputation, charging jury that such testimony "may alone create a reasonable doubt, although without it the other evidence would convince you of his guilt," would accentuate and give undue prominence to but one of many circumstances in evidence.

In Error to the District Court of the United States for the Southern Division of the District of Idaho; Charles C. Cavanah, Judge.

W. H. Baugh was convicted of receiving and concealing stolen automobile transported in interstate commerce, and of conspiracy to transport stolen automobile in interstate commerce, and to receive and conceal stolen automobile transported in interstate commerce, and he brings error. Affirmed.

Hawley & Hawley, of Boise, Idaho, for plaintiff in error.

H. E. Ray, U. S. Atty., and W. H. Langroise and S. S. Griffin, Asst. U. S. Attys., all of Boise, Idaho.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The appellant and one Jude Furcht were adjudged guilty upon two indictments, which by agreement of the parties were consolidated for trial.

In the first, No. 1462, there are two counts, each charging the two defendants jointly with a specific offense as defined by section 4 of the Motor Vehicle Theft Act (41 Stat. 324 [18 USCA § 408]). The second count, relating to a Hudson speedster, was dismissed as to appellant. The first count charges that in March, 1925, in Lincoln county, Idaho, the defendants knowingly and feloniously received and concealed a Buick sedan, which shortly theretofore had been stolen from the owner in Los Angeles and driven into Idaho by way of Ogden, Utah, the same constituting a part of interstate commerce, and the defendants having knowledge it had been stolen.

The other indictment in apt language charges a conspiracy, under section 37 of the Penal Code (18 USCA § 88), to commit offenses defined by both sections 3 and 4 of the Motor Vehicle Act (18 USCA § 408), and in it Carl Miller, alias Whitey Wilson, is named as codefendant with appellant and Furcht. As alleged, the conspiracy continued from about March 12, 1925, to January 1, 1926. Three overt acts are alleged; the first being substantially the substantive offense which constitutes the second count of indictment No. 1462; the second being the theft and transportation of the Buick sedan and delivery of the same to the appellant; and the third being similar to the second, except concealment by, instead of delivery to, appellant, is therein alleged.

It will suffice to consider the record in so far only as it relates to the Buick sedan. It is not questioned that the car was stolen by the defendant Miller, as alleged; that he drove it to Ogden, Utah, where, upon his failure to make a sale, he enlisted the cooperation of one Hargraves; that, after some unsuccessful attempts to sell at other places, they drove the car to the home of one Leeper, Hargraves' brother-in-law, who lived in the vicinity of Shoshone, where both appellant and Furcht resided; that with the aid of Leeper, who had prior thereto had relations with Furcht of an exceptional character, and was acquainted with appellant, Miller, after a devious course of negotiation, on March 12, 1926, delivered the car to appellant for a consideration of $400; that appellant thereupon stored the car in a barn on a farm, some distance out of Shoshone, belonging to him and occupied by one of his tenants; and that it was there seized under a search warrant by the sheriff of the county

four months later. Furcht at the time was actively engaged in the automobile business, and appellant, a doctor by profession, appears to have had divers interests, one of which was or had been dealing in automobiles. They were and for years had been intimate friends.

In addition to these facts the record exhibits a volume of circumstantial evidence bearing upon the question whether, at the time he received the car and thereafter, appellant knew it had been stolen. But this we need not analyze, for admittedly it was sufficient to carry the case to the jury.

[1] In view of the prominent part played by Leeper, who had been advised by Miller and Hargraves that the car had been stolen, in the negotiations with Furcht and appellant, and of other circumstances, it was undoubtedly legitimate to show the relations which for a reasonable length of time had theretofore existed between Leeper, Furcht, and appellant. To this end the government offered, and the court received, evidence to show that as far back as 1920 Leeper had been implicated in the theft of a Ford car, that he was apprehended in the act of transporting liquor therein, that upon conviction of a liquor charge he was sentenced to jail, and further that Furcht, if not actually implicated in the criminal transactions, was closely associated with Leeper at the time, procured appellant to go on his bond, and agreed to pay Leeper's family at the rate of $25 per week while he was in jail.

At the outset the court in effect stated in the presence of the jury that it was to be considered against the defendants only in case it was connected up with them; and when it was all in the opinion prevailed that, while it was competent for the purpose of showing close association between Leeper and Furcht, it was too remote as to appellant, and accordingly in the final instructions the court pointedly directed the jury not to consider it as against him. In part the court said: "You should disregard it, and not consider it in any way as against Baugh, nor in any way allow it to prejudice you against the defendant Baugh. * * * However, you will bear in mind that this testimony * * * may be considered by you as to defendant Furcht, and is limited to the sole question of whether or not the defendant Furcht had knowledge that the cars, or either of them, in question, * * * were stolen as charged, and also as to association, if any, between the witness Leeper and the defendant Furcht."

[2, 3] Ideally, of course, no incompetent or immaterial evidence should come to the knowledge of the jury, and it may be that, as urged, the impression made by incompetent evidence cannot always be wholly obliterated. But in the practical administration of justice this ideal cannot always be realized. In the trial of a case involving more than one defendant, and particularly upon a charge of conspiracy, where the proof must generally be measurably circumstantial, evidence must be received upon the theory, not that necessarily each bit of it is, when considered by itself, material or competent as to all defendants, but that, when fitted together and considered as a composite whole, the circumstances have the requisite probative value. Otherwise, even where each of several defendants has separately made admissions of his own guilt, proof thereof could not be received. Accordingly in such cases, not only must the trial court exercise its discretion touching the order of proof, but also the right to receive evidence competent against any one defendant, though incompetent as against all others.

We are unable to say that here the court either abused its discretion or transcended its right. True, the liquor charge against Leeper in itself had no relation to the issue herein, but that in a measure was necessarily incident to the stolen car transaction, and both together had no value, except as a background or setting for the issue here being tried. This, for the limited purpose clearly explained in the court's instructions, the jury was entitled to have; and, that being true, it was the duty of the court to receive the evidence, protecting appellant, in so far as was possible, by admonishing the jury to disregard it in considering his case. The mere fact that evidence otherwise legitimate may indirectly or incidentally disclose another offense by one or more of the defendants does not require its exclusion. Johnston v. United States (C. C. A.) 22 F. (2d) 1. And the court expressly and clearly cautioned the jury that the defendants were on trial only for the offense charged in the indictment, and not for previous transactions. See Katz v. United States (C. C. A.) 281 F. 129; Bilodeau v. United States (C. C. A.) 14 F.(2d) 582; Dahl v. United States (C. C. A.) 234 F. 618.

The general principles of procedure thus adverted to we believe cover and require rejection of all the assignments involving the admission of evidence, save possibly certain exceptions to testimony bearing upon appellant's conduct and divers circumstances following his receipt of the car. But to his

contentions in that respect there are two sufficient answers: In the main the testimony tended to reflect back upon his knowledge, intent and mental posture at the time he took over and stored the car. And in the second place, under any possible view, the objections were without validity unless the court was bound to hold, as a matter of law, that by the delivery of the car to appellant it was withdrawn from interstate commerce —an assumption, which, as we shall note later, was wholly unwarranted by the record.

Exceptions were taken to certain of the instructions, which were voluminous, and to the failure to give certain of the requests, of which we are informed there were 38.

[4, 5] After directing the attention of the jury to the charges in the first indictment and explaining the Motor Vehicle Act (18 USCA § 408), upon which they are predicated, the court analyzed the conspiracy indictment. Following an explanation of the charge of conspiracy, including both the combination and the necessity for an overt act done in pursuance thereof, this language was used: "This indictment further alleges three overt acts and the only difference between them lies in the fact that the object of the conspiracy is stated somewhat differently in each one. They all rest upon the same general transaction. The contention is that as to the first overt act the object of the conspiracy is alleged to have been transporting," etc. And each of the other two overt acts is referred to as stating "the object of the conspiracy."

Ordinarily, it is true, the averment of an overt act is not intended to be a statement of the object of the conspiracy, and the use of the language quoted is technically subject to criticism. But, as hereinbefore explained, it happens that in this particular indictment the description of each of the so-called overt acts makes of it a complete substantive offense substantially as defined by the Vehicle Theft Act, and, as alleged in the early part of the indictment, the object of the conspiracy was to commit offenses so defined. So that in a large sense the complete averment of each of the overt acts constituted also an averment of one of the objects of the conspiracy as covered by the formal charge thereof. Upon the most earnest consideration of the elaborate argument upon this point, we have been wholly at a loss to see how any possible prejudice could have resulted to appellant. After a clear and comprehensive explanation of the conspiracy statute the court said: "Two questions always present themselves: Did two

or more persons so agree together to do the unlawful thing; and did one of them take some step looking to the accomplishment of that unlawful purpose? If so, the offense of conspiracy is complete and punishable, even though the object of the conspiracy is never attained. Your inquiry, therefore, should be: Did the defendants conspire together; and, if so, did they thereafter, with the view of carrying out the object of such conspiracy, do one thing toward such end? If they did so conspire together, and take a single step to that end, they would all become guilty and punishable for the offense of conspiracy. You will observe that the government and the grand jury have in this indictment charged three overt · acts. It is not necessary that you find all of them were performed, but it is necessary that you find at least one of the three overt acts charged was done, and done with the intent to accomplish the purpose of the conspiracy, before you would be warranted in finding the defendants, or either of them, guilty. You will bear in mind that, before you can find the defendants, or either of them, guilty under indictment No. 1463 of the charge of conspiracy, you must first find that there was an unlawful conspiracy as charged."

How in the face of this instruction and other language of like import the jury could have been misled by the reference to the alleged overt acts as being the objects of the conspiracy or how any one could, as contended, have entertained the notion that the overt acts thus referred to constituted the offense charged we are unable to understand.

Arguendo, it is said that under these instructions, if appellant, with knowledge that the car had been stolen, received and concealed it, he would be guilty of conspiracy, "regardless of whether or not he had conspired as alleged." If the proposition is amplified to include conditions concerning which there is no dispute, it is measurably true, and to it, so amplified, there is no valid ground for objection. Miller had stolen the car, and Hargraves, having knowledge, joined with him in transporting it in interstate commerce into Idaho, for the purpose of disposing of it and putting it beyond the owner's reach. Leeper, with knowledge, was co-operating with them in the unlawful enterprise when the approach was made to Furcht and appellant. The three were beyond question in a conspiracy as alleged, and if thereupon appellant with knowledge gave assistance by receiving and concealing the car he too became chargeable. Pattis v.

United States (C. C. A.) 17 F.(2d) 562. To implicate one in a conspiracy it is not necessary that he say, either to another or to himself: I hereby join the unlawful enterprise. An act done with knowledge may effect the result.

[6] It is also assigned as error that the court failed to instruct the jury that, to constitute the offense defined by section 4 of the Vehicle Theft Act, appellant must have had knowledge, at the time he received the car, that it had been stolen; for, as argued, the vehicle then ceased to be in interstate commerce. The court did repeatedly instruct substantially in the language of the statute, and upon the record we do not deem it necessary to determine to what extent a proper request would have imposed the duty of amplification. The question when a stolen vehicle which has been transported in violation of section 3 of the act ceases to be the subject of criminal concealment, as defined in section 4, is not free from difficulty. It was left open in Katz v. United States (C. C. A.) 281 F. 129, and in Brooks v. United States, 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407, and because of the difficulty of formulating a general rule the attempt should await the necessity.

The evidence tending to show that the car was in interstate commerce up to the time appellant received and stored it, and that he then had knowledge of its having been stolen, was sufficient to require those issues to be submitted to the jury. In defendant's requests for instructions upon the point the court was asked to declare peremptorily that when appellant received the car it ceased to be in interstate commerce. But under the circumstances in evidence that was clearly a question of fact for the jury. With some plausibility it could be argued that, if appellant bought the car outright for his own use and had thereupon put it into service, the transaction would have operated to terminate the interstate character; but on the witness stand he stoutly denied that he bought the car at all, asserting that he took it only as security for a loan of $400, and that it was subject to redemption by Miller; and in fact he never put it into use.

[7] Complaint is also made of the failure of the court to instruct that the jury should not be influenced by the number of counts. But, there being only two counts against appellant, there was no possible occasion for such an instruction, and the court did instruct that the indictment was only a formal charge, and must not be considered as evidence, and with some elaboration that, while the two defendants were on trial together, each stood in his own right, that the verdict must embrace a finding separately as to each defendant upon each count, and that the evidence was to be considered as it bore upon the guilt or innocence of each defendant separately.

[8] There was testimony that defendants had borne a good reputation for honesty and integrity and appellant contends the pertinent instruction given was inadequate. The court said: "If you believe from the testimony that prior to the time of the alleged offense for which the defendants are now on trial, they bore a good reputation in the community where they resided for honesty and integrity, that is a circumstance in their favor which you will consider, together with all the facts and circumstances in evidence. It is competent testimony, and you should take it and consider it and give it such weight as appeals to your judgment." More was not required. Joyce v. United States (C. C. A.) 294 F. 665, 667, and cases there cited; Grace v. United States (C. C. A.) 4 F.(2d) 658, 662; Allen v. United States (C. C. A.) 4 F.(2d) 688; Kreiner v. United States (C. C. A.) 11 F.(2d) 722; Winter v. United States (C. C. A.) 13 F.(2d) 53.

[9] It may well be that in some cases such testimony will in fact operate to create a reasonable doubt, but, as pointed out in some of these cases, to give instructions such as were requested here specifically to the effect that the testimony adduced on behalf of appellant "may alone create a reasonable doubt, although without it the other evidence would convince you of his guilt," would be to accentuate and give undue prominence to what after all is but one of many circumstances in evidence.

The judgment is affirmed.