## GIBSON et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. February 11, 1929.

Rehearing Denied March 18, 1929.

No. 5464.

E. M. Hayden, M. A. Langhorne, and F. D. Metzger, all of Tacoma, Wash., for plaintiff in error Gibson.

Martin F. Smith, of Hoquiam, Wash., W. W. Mount, of Tacoma, Wash., and A. Emerson Cross, of Seattle, Wash., for other plaintiffs in error and appellants.

Anthony Savage, U. S. Atty., of Seattle, Wash., and John T. McCutcheon, Asst. U. S. Atty., of Tacoma, Wash., for the United States.

Before GILBERT and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

DIETRICH, Circuit Judge. Appellants, 14 in number, were convicted under an indictment charging them with conspiracy to violate the provisions of the National Prohibition Act (27 USCA).

1. After a trial consuming many days, they for the first time challenged the sufficiency of the indictment by a motion in arrest of judgment. Only defects in matter of substance can be reached by such a motion. Banta v. United States (C. C. A.) 12 F.(2d) 765. And emphasis is given to this limitation where, as here, there has been an unusually long and expensive trial. It is highly improbable that, if the defects relied upon in this case were of such character as to be in any wise prejudicial, able counsel for the defendants would have failed to discover them until after the verdict.

The indictment charges that at a specified time and place the defendants and others willfully, unlawfully, and feloniously conspired together "to commit certain offenses against the United States; that is to say, to manufacture, possess, transport, import, sell, * * * intoxicating liquors, to wit, whisky, gin, brandy, rum, wine, * * * and maintained a common nuisance, in violation of sections 3, 6, 21, and 26 of title 2 * * * of the National Prohibition Act, all of which was done with the willful, unlawful, and felonious intent of violating the aforesaid act."

The specific objections are (1) that there is in terms no averment that the manufacture, possession, etc., were to be "felonious and unlawful"; and (2) that, while it is averred that the liquors were to be fit for beverage purposes, it is not alleged that they were intended to be so used. It may be conceded that the pleading is meager and inartistically drawn, but we do not think it is so wanting in substance as to be vulnerable to attack by a motion in arrest of judgment. We cannot see any material difference between an averment that whisky was to be unlawfully manufactured and an allegation that it was to be manufactured in violation of certain specified statutory provisions defining the manufacture as constituting a criminal offense.

As to the second point, we are of the opinion that, even in a charge of a substantive offense under the National Prohibition Act, it is unnecessary to negative the possibility that the alleged unlawful manufacture or sale may have been for a legitimate nonbeverage purpose. Leonard v. United States (C. C. A.) 18 F.(2d) 208. But as bearing upon both objections it is to be borne in mind that, where conspiracy is the gist of the charge, "it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." Wong Tai v. United States, 273 U. S. 77, 81, 47 S. Ct. 300, 301 (71 L. Ed. 545).

2. Anticipating a protracted trial, the court, following a practice authorized by the Washington statutes, selected and qualified, at the time the jury was impaneled and sworn, a thirteenth or alternate juror. This was done, not only without objection from, but with the express consent of, counsel for defendants. As it turned out, no contingency arose requiring the service of the alternate juror, and just before the instructions he was discharged from further attendance, and took no part in the jury's deliberations, so that in fact he never became a member of the jury. The incident is now for the first time urged as error. There is no federal statute authorizing such a practice, and it is to be conceded that in a federal court a defendant charged with a felony has the right to a trial by jury, and further that by jury is meant a body of 12, and that such right cannot be waived. Const. U. S. art. 3, § 2; Maxwell v. Dow, 176 U. S. 586, 20 S. Ct. 448, 494, 44 L. Ed. 597; Thompson v. Utah, 170 U. S. 343, 18 S. Ct. 620, 42 L. Ed. 1061; Rasmussen v. United States, 197 U. S. 516, 25 S. Ct. 514, 49 L. Ed. 862; Low v. United States (C. C. A.) 169 F. 86, 91.

But here the right so defined and guaranteed was in no wise curtailed; 12 men were regularly selected and sworn as jurors,

and they alone constituted the jury from the beginning to the end of the trial. The case, therefore, presents no unusual circumstance, other than that a citizen without interest or bias, and possessed of all the qualifications of a juror, was permitted to sit and associate with the 12 during the period the evidence was being taken. No public interest or constitutional private right was thus invaded, and the point therefore amounts to nothing more than that with defendants' approval such a citizen was permitted to come into close contact with members of the jury. Even were it assumed that defendants had the right to object, the objection would be one which they were competent to waive. Presumably the customary admonition given to jurors that they are not to discuss the issues until the case is finally submitted was heeded by all, and, in truth, actual prejudice is scarcely suggested. Such being the facts, it is unnecessary to decide the general question of the power of federal courts to adopt the alternate juror practice.

■ 3. Over objection the court received in evidence an affidavit made by defendant Curtis in August, 1927, about 6 months after the indictment was returned. Curtis delivered the affidavit to a deputy collector of internal revenue, with the assurance on the part of the deputy that it would be considered only as bearing on affiant's income tax obligations, and would not be used against him in any case pending in court. It is in the nature of a supplementary return, and the statements therein made bear somewhat remotely upon the question of Curtis' guilt. If admissible at all, it was competent only as against him, and accordingly, when it was received in evidence, the court expressly admonished the jury that it was offered only as affecting the issues between him and the government, and was not to be considered as evidence against any other defendant. Though undoubtedly increasing the delicacy of the situation, the reference in the affidavit to defendant Gibson did not necessarily require its exclusion. Kuhn v. United States (C. C. A.) 24 F.(2d) 910, 913; Baugh v. United States (C. C. A.) 27 F.(2d) 257, 259.

■ We are not impressed by the contention that, because the court, in deference to the rule recognizing the privacy of income tax returns, withheld it from general publicity, and permitted only counsel for defendants and the jury to see and read it, and then ordered it placed in the secret files of the court, with permission to counsel further to examine it, the rights of defendants were in some vague way prejudiced. If it be assumed that the question of a public trial is at all involved, counsel for all defendants expressly consented to the course pursued, and cannot now be heard to complain. 16 C. J. 808.

The deputy collector was incompetent to waive such right, if any, as the government had under the law to make use of the affidavit as evidence, and the remaining question is of such right. By a rule of the Treasury Department (Regulations 69, art. 1091; Treas. Dec. 2962; In re Epstein (D. C.) 300 F. 407; Id. [C. C. A.] 4 F.[2d] 529), it is provided that upon the written request of the Attorney General, or one of his assistants, an income tax return or a copy thereof may be furnished by the Commissioner to a United States attorney for use as evidence in any litigation in court, where the United States is interested in the result. Or, if the return is in the possession of a collector, it may, upon the conditions stated, be furnished by him. When the return or a copy thereof is so obtained, its use is to be limited to the purpose for which it is furnished, and unnecessary publicity is to be avoided. The use of returns in legal proceedings with such limitations is also recognized in the President's executive order of April 13, 1926, approving regulations of the Secretary of the Treasury, paragraph 14 of which provides: "In the case of returns or copies thereof furnished by the department for use in legal proceedings only such inspection as necessarily results from such use is permitted." Regulations 69, p. 203. The record shows that, following a telegram from the district attorney to the Attorney General, requesting that authority be secured from the department for the use of the affidavit, a telegram was received by the collector having custody of the affidavit, from the Commissioner, directing him to produce it and to furnish a copy thereof, if a copy was desired by the district attorney. Indulging the presumption of official regularity, we think this was sufficient to warrant what was done.

■ 4. There was no error in admitting the testimony of one Bowers, which in substance was that in the fall of 1925—within the period covered by the charge—defendants Gibson, the sheriff, and Quinn and Connell, two of his deputies, and numerous other persons, had some kind of a party at a roadhouse, where the witness was "serving drinks and was sort of a roustabout," and that during the time they were there, up to 2 o'clock in the morning, he served a considerable quantity of Johnnie Walker whisky, brought there by the members of the party, and that no

one was arrested. While in itself only a remote circumstance, the incident was competent as bearing upon the associations of the defendants and their attitude toward the unlawful possession and use of intoxicants.

5. The conspiracy is charged to have been in continuous operation from April, 1922, to the date the indictment was returned, November 22, 1927. One Young, a confessed bootlegger, testified upon behalf of the government that, while engaged in that business, he paid the chief of police of Cosmopolis for protection, and that he, the chief of police, shared the money with appellant Gibson, who was then sheriff, and that on one occasion, in January, 1922, he saw the chief of police pay over to Gibson $100 of the money. No objection was interposed to the reception of the testimony, and no motion was at any time made to strike it out. Young was cross-examined, and later defendants offered testimony in rebuttal. In a request for an instruction that the jury disregard the testimony, the defendants for the first time manifested their dissatisfaction. Though the testimony related to an incident occurring shortly prior to the period charged in the indictment, we think it was competent. Vendetti v. United States (C. C. A.) 27 F. (2d) 856; Grayson v. United States (C. C. A.) 272 F. 553. Besides, the objection came too late. Lambert v. United States (C. C. A.) 26 F.(2d) 773.

6. Of the 34 instructions requested by defendants, some were to the effect that, without participation or active aid, mere knowledge of a conspiracy does not incriminate, and others that knowledge and inaction on the part of the defendant county sheriff and his deputies would be insufficient to warrant conviction, unless they purposely refrained from performing their duty with a view of protecting the conspirators who were actively engaged in violating the law. It may be conceded that in substance the requests were correct, but the court was not bound to give them in form. Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Ng Sing v. United States (C. C. A.) 8 F.(2d) 919; Ammerman v. United States (C. C. A.) 267 F. 136; McDonald v. United States (C. C. A.) 9 F. (2d) 506; Fraina et al. v. United States (C. C. A.) 255 F. 28. In addition to general expressions implying the rule elaborated in the requests, the court gave the following specific instructions:

"One does not commit an offense by mere knowledge that a crime is being committed by another, but if with that knowledge one aids in its commission, or counsels or induces its commission, he thereby commits the offense," and

"In a civil suit for damages a sheriff would be liable for such damages as were proximately caused by the wrongful act of his deputy, the act being one done by him as an officer as distinguished from his act as a private citizen. In a civil suit the sheriff would be so liable whether he authorized such act or not and even though he was ignorant of its doing; but in a criminal case, such as this, he would not be liable, on account of a conspiracy in which a deputy was a conspirator unless he himself was also a conspirator.

"There are both state and national laws prohibiting the sale of intoxicating liquor; the fact that certain of the defendants were public officials under the laws of the state of Washington, a part of whose duty it was to enforce the liquor laws of Washington, would give them no authority or discretion which would protect them or make them less guilty if they made an agreement—that is, conspired as alleged—to violate the laws of the United States, and thereafter, as alleged, one or more overt acts alleged was done or were done."

We think the subject was sufficiently covered to guard the jury against error.

Nor can we believe that, considering the instructions as a whole, any juror could have failed to understand that defendants were being tried for a conspiracy, and not for the substantive offenses alleged to have been the objects thereof.

We have considered the other assignments involving requests, but, having found in them less substance than in those we have specifically referred to, we deem discussion unnecessary.

7. We find no merit in the contention that the evidence was insufficient to warrant a verdict against the appellants Adams, Quinn, Sharpley, and Johnson. Without unduly prolonging the opinion, we cannot set out the incriminating circumstances; but the incidents referred to in their brief were sufficient in themselves to take the issue to the jury. For example, referring to the case of Adams, who was the only one of the four who moved for an instructed verdict, there was testimony to the effect that he permitted to be made, if he did not participate in making, a still in his shop. A witness who was engaged in manufacturing liquor, and delivered an average of 50 gallons a day, testified that Adams was one of the persons to whom

he made delivery, and another witness testified that, under circumstances strongly tending to show an unlawful organization for the violation of the National Prohibition Act, of which Adams was a member, he assisted in "hauling in a load" of liquor.

8. The defendants offered evidence of their good reputation in the community where they reside, and this the government met by rebutting testimony. No criticism is made of the court's instruction upon the consideration to be given to good reputation, but it is earnestly contended that it was error to charge in effect that the burden was on defendants by a preponderance of the evidence to establish it. Undoubtedly the burden is always upon the government to prove a defendant's guilt. That means, and means only, that the government must prove every essential element of the charge. But a defendant's reputation is in no sense an element of the charge, and, being at most an evidentiary circumstance, to be adduced in defendant's favor, naturally to have probative value it must first be established, and the party seeking to benefit by it has that burden. In the discussion appellants apparently confuse evidence of good reputation with good reputation as evidence. Testimony of good reputation is wholly without efficacy, unless the jury is convinced that in fact defendant bears a good reputation; for it is such reputation, and not the testimony tending to prove it, that has a probative bearing upon the substantive issue of defendant's guilt or innocence. In view of the scope of appellants' argument, it is to be noted that the instructions complained of did not extend to good character, but only to the circumstance of good reputation.

The same considerations apply to the collateral issue raised respecting the credibility of certain of the government's witnesses by testimony of bad reputation in point of their veracity. Unless sufficient to convince the jury that their reputation was in fact bad, the testimony on the point would avail nothing.

Affirmed.

NORCROSS, District Judge (dissenting in part). I concur in the opinion and judgment, except in respect to the matters hereinafter referred to.

I am of the opinion the admission in evidence of the Curtis affidavit was error, so far as the defendant Elmer Gibson was concerned. The instruction given to the jury that the affidavit could only be considered as evidence against the defendant Curtis was not sufficient to remove its damaging effect. While the affidavit is not in the record, it is stated in the briefs that it set forth that Curtis had received large sums of money during the years 1924 and 1925, and that the largest portion of the sums received was given to defendant Elmer Gibson. The affidavit would have no evidentiary value, even against the defendant Curtis, unless the jury could draw some conclusion therefrom, considered with other evidence in the case, that the money referred to was money received by him in pursuance of the alleged conspiracy. That was the only purpose for which it could have been offered and received in evidence.

Counsel for the government considered this evidence of such importance that its admission was stressed with great earnestness, notwithstanding its competency, even as against Curtis, raised new and serious questions for the court to consider. Evidence of an admitted receipt by Curtis of large sums of money, especially when accompanied with the statement that a large portion thereof had been paid over to Gibson, in view of other testimony in the case, did more, in my opinion, than bear somewhat remotely upon the question of the guilt of Curtis. It was the expressed view of both the court and counsel for the government that, if Gibson's name as used in the affidavit was in some way withheld from the knowledge of the jury, the affidavit would be meaningless.

Counsel for the defendant Gibson is recorded in the record as saying: "Now, although your honor may instruct the jury to absolutely disregard that statement as against him, yet it is before them, * * * and I ask, in the furtherance of justice and in the end that he may have a fair trial, that any reference to my client be deleted." To this request counsel for the government replied: "We object to the deletion of the affidavit; that it should be admitted in its entirety, in order that the jury may have an understanding of the whole thing. The matter is admissible as a whole, or not at all."

Counsel for the government further stated: "Before the court reads that affidavit, I would like to submit that the court keep in mind that this is a conspiracy case, and that a declaration, to be of any evidence against this defendant at all, is to show his connection with some other defendant in this case; then, if it is deleted, it will rob it of its value, so far as this conspiracy is concerned." After reading the affidavit, the court stated: "It is obvious, if deleted, it would be meaningless."

We have for consideration, then, a statement in the form of an affidavit made by one of the alleged conspirators after the termination of the alleged conspiracy concerning his federal income tax return, inadmissible except as against the defendant making the same. We have also for consideration the situation, expressed by counsel for the government, "that a declaration, to be of any evidence against the defendant [Curtis] at all, is to show his connection with some other defendant," and that, "if it is deleted, it will rob it of its value so far as this conspiracy is concerned."

The practical effect of admitting the affidavit as against Curtis, and instructing the jury that it could be considered as evidence only against him, and should not be considered as against any of the other defendants, was to tell the jury that they might reach the conclusion from the affidavit, taken in consideration with other testimony in the case, that as to Curtis the money referred to in the affidavit was in fact money received by him for "protection," and that, to connect him with the alleged conspiracy, he paid the greater or some part of it over to Gibson, but that, as to Gibson himself, they should dismiss from their minds, and not consider, that the affidavit was of any evidentiary weight whatsoever. It was never intended that the liberty of the citizen might be required to rest upon the ability of each of 12 jurymen to so control the processes of his mind as to be able to accomplish what was called upon him to do by the instruction in question.

I think the statements contained in the affidavit of Curtis, in reference to the defendant Gibson, were of such a character that an instruction to the jury not to consider the same as to any of the other defendants would not, as to Gibson, cure the injury that would otherwise follow from the admission in evidence of such affidavit. It is too much to expect that the jury might believe from this piece of evidence that, as to Curtis, he received and paid over to Gibson certain moneys, but as to Gibson no conclusion would follow from the consideration of the affidavit that Gibson received such money from Curtis. As to the defendant Elmer Gibson, I am of opinion that the admission of the Curtis affidavit was prejudicial error.

While not so clear, as in the case of Gibson, that the admission of the Curtis affidavit was prejudicial, the fact that the defendant T. M. Quinn was a deputy sheriff under Gibson renders it at least uncertain whether the same prejudice would not follow, in some degree, at least, as in the case of his superior officer. Several affidavits were filed by Quinn in support of his motion for a new trial. The effect of these affidavits was to show that upon a new trial the defendant Quinn would be able to contradict, if not impeach, the testimony given against him at the trial by one Ed Wagner. Altogether I am of opinion that the defendant Quinn also is entitled to a new trial.